2024 IL App (1st) 231120

FIFTH DIVISION
March 29, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-23-1120

| | | |
|---|---|---|
| KARL STARR and LYNN STARR, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County. |
| PRESENCE CENTRAL AND SUBURBAN HOSPITALS | ) | |
| NETWORK, an Illinois Corporation d/b/a Amita Health | ) | |
| Saint Joseph Medical Center Joliet; DEBRA L. JUHANT; | ) | No. 21 L 12506 |
| LARISSA CHAIDEZ; SUMIT SINGH, M.D.; | ) | |
| AMERICAN ANESTHESIOLOGY ASSOCIATES OF | ) | |
| ILLINOIS, S.C., an Illinois Corporation; JONATHAN C. | ) | Honorable |
| WU, M.D.; and DU PAGE MEDICAL GROUP, LTD., | ) | Moira S. Johnson, |
| | ) | Judge Presiding. |
| Defendants, | ) | |
| | ) | |
| (Presence Central and Suburban Hospitals Network, Debra | ) | |
| L. Juhant, and Larissa Chaidez, Defendants-Appellants). | ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an interlocutory appeal from the denial of a motion to transfer venue. Three of the

defendants in this medical malpractice case—Presence Central and Suburban Hospitals Network

(d/b/a Amita Health Saint Joseph Medical Center Joliet) (Presence) and two of its nurses, Debra

L. Juhant, R.N., and Larissa Chaidez, R.N.—unsuccessfully moved to transfer the case from Cook

County to Will County on grounds of *forum non conveniens*. The facts are largely undisputed. Will

County is where plaintiffs Karl and Lynn Starr live and where the purported negligence occurred with respect to Mr. Starr's medical care. Cook County is where Mr. Starr has since received extensive inpatient and outpatient follow-up care. The circuit court considered the locations of potential witnesses and evidence likely to be presented at trial and detailed its findings regarding the relevant private and public interest factors in a lengthy written decision. For the reasons that follow, we find no abuse of discretion in the court's application of those factors or in the degree of deference it afforded to the Starrs' choice of forum. We affirm the circuit court's order denying the motion to transfer venue.

¶ 2                                    I. BACKGROUND

¶ 3     The Starrs have brought medical negligence and loss of consortium claims in the circuit court of Cook County against Presence, nurses Juhant and Chaidez, doctors Sumit Singh and Jonathan C. Wu, and the doctors' respective practice groups, American Anesthesiology Associates of Illinois, S.C. (American Anesthesiology), and Du Page Medical Group, Ltd (Du Page Medical). They allege that on February 21, 2020, Mr. Starr was admitted to Presence to undergo a colostomy reversal, an inpatient procedure performed by Dr. Wu, and that by February 25, 2020, while still an inpatient, Mr. Starr began to exhibit symptoms of hypotension and sepsis. The Starrs further allege that Dr. Wu ordered a urinalysis and chest X-ray but did not immediately follow up on the results of those tests and was not contacted by hospital staff until the following morning, February 26, 2020, when Mr. Starr was brought to the operating room for exploratory surgery. Dr. Singh, the anesthesiologist for that procedure, performed a standard induction, during which Mr. Starr aspirated bilious stool.

¶ 4     The Starrs allege that Ms. Juhant and Ms. Chaidez, as employees or agents of Presence's, failed to properly monitor Mr. Starr, recognize and address his symptoms, or call a physician when

2

his condition began to deteriorate. They allege that Dr. Wu failed to timely follow up on the tests he ordered for Mr. Starr, properly monitor Mr. Starr's care, or communicate with Dr. Singh regarding the risks of intubation for Mr. Starr. The Starrs also allege that Dr. Singh failed to perform a preoperative evaluation to determine the risk of intubation, failed to perform a safe induction, did not take appropriate steps after Mr. Starr aspirated, and did not follow accepted protocols when it became clear that Mr. Starr was suffering from acute respiratory distress syndrome (ARDS).

¶ 5    Pursuant to section 2-622 of the Code of Civil Procedure (Code) (735 ILCS 5/2-622 (West 2020)), the Starrs attached to their complaint affidavits from two medical professionals they consulted with before initiating this litigation. Both doctors stated that as a proximate result of the defendants' deviations from their respective standards of care, "Mr. Starr suffered from respiratory failure, ARDS, hypoxia, and septic shock," necessitating his transfer to the University of Chicago for ECMO (a process by which a patient's blood is oxygenated outside of the body) and requiring a prolonged hospital stay. The doctors further stated that during the course of his treatment, Mr. Starr "developed gangrene of both feet and his right thumb, and eventually suffered a bilateral transtibial [below-the-knee] amputation."

¶ 6    Presence, Ms. Juhant, and Ms. Chaidez (collectively, movants) moved to transfer venue from Cook County to Will County, on grounds of *forum non conveniens*. They argued that the relevant private and public interest factors weighed in favor of transfer because the purported negligence occurred at Presence, which is located in Will County, both nurses resided and worked in Will County, other key witnesses and evidence were located in Will County, and Will County was the forum with the greatest public interest in the resolution of this controversy. In affidavits attached to their motion, Ms. Juhant and Ms. Chaidez each averred that it would be inconvenient

for them, personally and professionally, if this matter was tried in Cook County. And Christopher Shride, Presence's president, maintained in his affidavit that transferring this matter to Will County, "would minimize caretaker time away from patients, avoid staff disruptions, and permit the continuity of care to patients." Movants also argued that the Starrs' choice of Cook County as a forum should be given little deference since they did not reside there and the complained of conduct did not occur there.

¶ 7     The Starrs argued the motion to transfer should be denied. They emphasized that Mr. Starr received one month of post-injury treatment at the University of Chicago, located in Cook County, followed by one month of rehabilitation at Regency Northwest Indiana, located in East Chicago, Indiana. They pointed out, too, that Mr. Starr continued to receive treatment at Rush University in Cook County and with various doctors at Duly Health and Care (formerly known as Du Page Medical) at three of that group's locations in Cook County (Oak Lawn, Tinley Park, and Orland Park). Because there would likely be many witnesses called at trial for whom Cook County would be a more convenient forum, and because Will County and Cook County are adjacent to one another, the Starrs argued that movants had failed to meet their burden of showing that the relevant factors strongly favored transfer of the case to Will County.

¶ 8     The circuit court denied the motion to transfer in an 11-page memorandum opinion and order entered on May 25, 2023. The court acknowledged that the Starrs' choice of forum was entitled to less deference than if they resided there or the conduct complained of occurred there. The court noted, however, that transfer would still only be granted if the balance of private and public interest factors strongly favored movants' choice. It then went on to consider each of those factors at length.

¶ 9     The court concluded the private interest factors "only very slightly" favored transfer of the

4

case to Will County. Ease of access to evidence and the cost of obtaining witnesses favored transfer, in the court's view, but the convenience of the parties did not. Other miscellaneous private interest factors either very slightly disfavored transfer or were neutral. As to the public interest factors, the court concluded that the interest in deciding local controversies locally and the desire to not burden a forum with few ties to a matter with the expense of a trial both favored transfer. Concerns regarding court congestion, however, disfavored transfer. While the court believed that the totality of the circumstances might "very slightly favor transfer to Will [County]," it did not find that they "strongly favor[ed] transfer in some exceptional way." Movants had thus not overcome the deference still afforded to the Starrs' chosen forum, and their motion was denied.

¶ 10    Movants now appeal.

¶ 11                                II. JURISDICTION

¶ 12    The circuit court denied movants' motion to transfer venue on May 25, 2023, and they timely petitioned this court for leave to appeal that ruling on June 26, 2023. We granted their petition on July 28, 2023, and have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which provides for discretionary interlocutory appeals from orders granting or denying motions to dismiss or transfer based on *forum non conveniens*.

¶ 13                                III. ANALYSIS

¶ 14    *Forum non conveniens* is an equitable doctrine "which permits the circuit court to decline jurisdiction in the exceptional case where a trial in another forum with proper jurisdiction and venue would better serve the ends of justice." *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 273 (2011). It is a flexible doctrine "grounded on considerations of fundamental fairness and sensible and effective judicial administration." (Internal quotation marks omitted.) *Id.* To determine whether dismissal or transfer is appropriate, Illinois courts consider the private and public interest

5

factors set out by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *First American Bank v. Guerine*, 198 Ill. 2d 511, 515-17 (2002).

¶ 15　The private interest factors set out in that case are

"(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive—for example, the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises (if appropriate)." *Id.* at 516.

The public interest factors are

"(1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to court dockets in already congested fora." *Id.* at 516-17.

¶ 16　Emphasis is placed on no single factor. *Id.* at 518. "Instead, the trial court must evaluate the total circumstances of the case" and determine "whether the defendant has proven that the balance of factors strongly favors transfer." *Id.* We will reverse the circuit court's decision on a *forum non conveniens* motion only "if it can be shown that the court abused its discretion in balancing the relevant factors", *i.e.*, "where no reasonable person would take the view adopted by the circuit court." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 17　　　　　　A. The Deference Given to Plaintiffs' Choice of Forum

¶ 18　We first consider the degree of deference the circuit court afforded to the Starrs' choice of forum. Generally, because "[t]he plaintiff has a substantial interest in choosing the forum where his rights will be vindicated," his choice of forum "should rarely be disturbed." *First American*

6

*Bank*, 198 Ill. 2d at 517. A plaintiff's choice is entitled to less deference, however, where, as here, the plaintiff is not a resident of the chosen forum (*Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990)) and the chosen forum is not the site of the alleged negligence (*Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 338 (1994)). Even under those circumstances, however, the plaintiff's choice is still entitled to *some* deference. See *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997) (noting that the deference to be accorded in such circumstances "is only *less*, as opposed to *none*" (emphases in original)). The test is still "whether the relevant factors, viewed in their totality, strongly favor transfer to another forum." *Id.*

¶ 19    Movants urge us to conclude that the Starrs engaged in forum shopping and accordingly find that the circuit court should have afforded their choice "little, if any, weight." Our supreme court acknowledged in *Dawdy*, 207 Ill. 2d at 174, that forum shopping, though never favored, is relatively commonplace, and that "ordinarily plaintiffs' zeal in those respects is matched only by defendants' efforts in seeking to avoid such fora" as may be considered sympathetic to a plaintiff's case. (Internal quotation marks omitted.) Indeed, courts are instructed not to consider the practice of forum shopping in their *forum non conveniens* analyses. *Id.* at 175. The test itself, the *Dawdy* court explained—whereby deference to the plaintiff's choice is but one factor and is given more or less weight depending on the circumstances—"ensures that a nonresident plaintiff's choice of forum will not be accorded undue deference." (Internal quotation marks omitted.) *Id.* at 176.

¶ 20    The circuit court thus did not abuse its discretion by affording the Starrs' choice of forum some deference, even though the Starrs do not reside in Cook County and the negligence they complain of is not alleged to have occurred there. The circuit court properly acknowledged the lesser deference that should be afforded in these circumstances and proceeded from there.

¶ 21    We next turn to the private and public interest factors bearing on the court's decision to

grant or deny a transfer on grounds of *forum non conveniens*.

¶ 22                                      B. The Private Interest Factors

¶ 23                                      1. *Convenience of the Parties*

¶ 24     The first private interest factor is the convenience of the parties. *First American Bank*, 198 Ill. 2d at 516. In support of their argument that this factor favors transfer to Will County, movants submitted affidavits of inconvenience stating that Presence is located in Will County and Ms. Juhant and Ms. Chaidez both work at Presence and live in Will County. Mr. Shride, the hospital's president, maintained in his affidavit that holding the trial in this case in Will County would "minimize caretaker time away from patients, avoid staff disruptions, and permit the continuity of care to patients." Ms. Juhant and Ms. Chaidez likewise represented that attending trial in Cook County "would create an inconvenience trying to obtain coverage for [their] professional duties" and that a trial in Will County would be better because they "would be in close proximity to patients or others needing care or information." Movants emphasize that these assertions in their affidavits are unrebutted. They rely on *Bruce v. Atadero*, 405 Ill. App. 3d 318, 325 (2010), a case where a doctor and a nurse made similar assertions of inconvenience and those assertions were accepted by the court without question, and accuse the circuit court in this case of ignoring their affidavits.

¶ 25     The circuit court did not ignore movants' affidavits; it specifically mentioned them and referred to them by exhibit number in the lengthy statement of facts preceding its decision. Movants' position is that the circuit court should simply have taken the conclusory statements of inconvenience in their affidavits at face value. But to decide a *forum non conveniens* motion, which necessarily pits one side's declared preference against the other's, on any reasoned basis a court "must look beyond the [parties'] declarations of convenience," and "realistically evaluate

8

*** the actual burden each party bears when traveling to the plaintiff's chosen forum." *Hale v. Odman*, 2018 IL App (1st) 180280, ¶ 34.

¶ 26    Here, as the Starrs point out, Ms. Juhant and Ms. Chaidez will likely be unable to see patients or otherwise perform their work duties during trial, no matter where the trial is held. That is the conclusion we reached in *Foster v. Hillsboro Area Hospital, Inc.*, 2016 IL App (5th) 150055, ¶ 37, where a doctor claimed that a trial in the plaintiff's chosen forum would cause her to see fewer patients. The doctor's affidavit, like those movants have given here, "provided no specific facts in support of [that] averment," leaving the court to conclude that it would be difficult for the doctor to see patients during days that trial was in session, regardless of where the trial was held. *Id.* Movants have failed to explain why that is not equally true here.

¶ 27    Movants additionally argue the circuit court made a factual error when it observed that "AMITA maintained a large hospital network" with "at least six locations in Cook County" and concluded, "given [that] widespread presence," that neither county was more or less convenient for the hospital system than the other. Movants maintain that the corporate defendant at issue here, Presence Central and Suburban Hospitals Network, has hospitals only in Kane, Kankakee, and Will Counties. AMITA Health does not own or operate Presence, they contend, but is simply a management company. Plaintiffs dispute this characterization and contend that "supporting documentation submitted to the court contradicts this statement."

¶ 28    To the extent that movants are contending that the circuit court made a factual error, the burden was on them to resolve this before the circuit court. The Starrs state in their response to movants' motion to transfer venue, with cites to the record, that Presence was merged into AMITA Health and AMITA Health maintains or controls six major hospitals in Cook County. Movants said nothing about AMITA Health or its relationship with Presence in its reply. While movants

did try to address this issue in their motion to reconsider, that was filed after they petitioned this court for leave to appeal the circuit court's denial of their motion to transfer, which we granted. There is no indication in the record on appeal that the motion to reconsider was ruled on or should be considered part of this appeal.

¶ 29   But more importantly, even if we assume for purposes of our analysis that the circuit court made a factual error as to the connection between AMITA Health and Presence, movants have not convinced us that, absent that purported error, the circuit court's analysis would have or should have been different.

¶ 30   The circuit court referenced its understanding that Presence was part of AMITA Health in its assessment of the convenience of the parties. Because AMITA had offices in Cook County, the court concluded that, absent an affidavit to the contrary, it would have to assume neither Cook County nor Will County was more convenient for the corporate defendant. But, as the circuit court noted, to find that the convenience of the parties favored transfer, movants needed to show not only that the Starrs' chosen forum was inconvenient for movants but also that their preferred forum of Will County was "more convenient to *all parties*." (Emphasis added.) *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 444 (2006). Will County, where the Starrs reside, would clearly be convenient for them. But it is presumed that the Starrs' chosen forum is also convenient for them. See *First American Bank*, 198 Ill. 2d at 518 (noting that a defendant "cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff").

¶ 31   The other four defendants in this case did not join in the motion to transfer venue and submitted no evidence that Cook County was inconvenient for them, although Dr. Wu did submit an affidavit of inconvenience that movants attached to the reply in support of their motion to reconsider. Movants note that Dr. Wu resides in Will County, that both he and Dr. Singh work in

Will County, and that American Anesthesiology maintains several locations, one of which is in Will County. The Starrs counter with ties those defendants have outside of Will County, noting that Dr. Singh lives in Du Page County, that American Anesthesiology also operates in Cook County, and that Duly Health and Care (formerly Du Page Medical) has over 100 locations in Illinois, including several locations in Cook County where Mr. Starr received follow-up care.

¶ 32    The circuit court considered all of this and was persuaded that Will County was a more convenient forum for "some" of the parties to this litigation and thus this factor did not favor transfer. That would still be true even if Presence had no locations in Cook County. This factor was not decisively impacted by any confusion about Presence's relationship with AMITA Health.

¶ 33                              2. *Relative Ease of Access to Evidence*

¶ 34    The second private interest factor is "the relative ease of access to sources of testimonial, documentary, and real evidence." *First American Bank*, 198 Ill. 2d at 516. The circuit court considered this factor at length, devoting three pages of its decision to discussing the various categories of evidence likely to be presented in this case, and determined that, overall, the ease of access to evidence favored transfer. Movants agree but fault the court for not concluding that this factor *strongly* favored transfer. For the reasons that follow, we again find no abuse of discretion.

¶ 35    The circuit court accepted both movants' argument that medical records, imaging, and samples relating to Mr. Starr's medical care at Presence were located in Will County and the Starrs' counterargument that similar evidence relating to his subsequent post-injury care was primarily located in Cook County. Noting that advances in technology have made it possible for "photographs and other documentary evidence [to] be accessed from virtually anywhere" (see *Pierce v. Cherukuri*, 2022 IL App (1st) 210339, ¶ 35 (observing that this has made the location of documentary evidence less significant)), the court found the location of this category of evidence

11

to be a neutral consideration.

¶ 36   The court then considered three categories of testimonial evidence: occurrence or "on-site" witnesses, post-injury treating witnesses, and lay or damages witnesses.

¶ 37   With respect to occurrence witnesses, the court noted that the parties had collectively identified 14 nonparty witnesses to the on-site care and treatment of Mr. Starr at Presence, and that all lived or worked in Will County. The court agreed with movants that the location of those witnesses strongly favored transfer.

¶ 38   The court then noted that the Starrs had disclosed 57 potential treating witnesses, including 41 individuals who provided Mr. Starr with postinjury care at the University of Chicago. Accepting movants' arguments that all but 5 of those 41 witnesses would provide duplicative testimony or were radiologists who would be unlikely to testify at trial, the court concluded that there were a total of 21 treating witnesses whose locations were relevant to the *forum non conveniens* analysis. Of those, 6 worked at Regency Northwest Indiana, which the court noted was closer to the Will County courthouse but by only a negligible distance, 7 were located in or near Will County, and 8 were located in or near Cook County. Overall, the court concluded that the locations of treating witnesses slightly disfavored transfer.

¶ 39   Movants cite *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 227 (1987), for the proposition that a plaintiff can "easily frustrate the *forum non conveniens* principle by selecting as a witness a treating physician or expert in *** an inconvenient forum." The plaintiff in *Bland* was injured while working for the defendant's railroad and argued against transfer of the case, based in part on the fact that two of his five treating physicians were located in his preferred forum. *Id.* at 221, 229. Our supreme court admonished in that case that "[o]ne should be cautious," ordinarily, "not to give undue weight to the fact that a plaintiff's treating physician or expert has an office in

the plaintiff's chosen forum." *Id.* at 227.

¶ 40    The circuit court here acknowledged this concern but also recognized that "Mr. Starr likely did not 'select' these treating physicians." The record supports this distinction. The Starrs' allegations, as well as the affidavits of the doctors who reviewed Mr. Starr's medical records and consulted with the Starrs before this case was filed, reflect that Mr. Starr, while suffering from serious conditions including septic shock, was transferred by Presence to the University of Chicago, where he remained as an inpatient for over a month. He was then transferred to Regency Northwest Indiana for a month of rehabilitation. The Starrs have represented in their briefing, both in this court and in the circuit court, that the transfer to the University of Chicago was by ambulance on the same day as his exploratory surgery. Movants do not dispute this. And indeed, in his deposition, Dr. Wu testified that once Mr. Starr was put on ECMO, "he got transferred over to the University of Chicago pretty much like right away." The concern voiced in *Bland* is simply not applicable here, where nothing in the record suggests that the Starrs had any opportunity or inclination to strategically choose the location of Mr. Starr's post-injury care to suit their litigation preferences.

¶ 41    At oral argument in this appeal, counsel for movants also suggested that most of the treating witnesses here were likely to testify by videotaped evidence deposition, rather than in person at trial. As support for this proposition, counsel directed the court's attention to *Schuster v. Richards*, 2018 IL App (1st) 171558, a case in which we held that it was not an abuse of discretion for the circuit court to consider the likelihood that most of the healthcare providers would not testify in person as part of its *forum non conveniens* analysis. *Id.* ¶ 33. Of course, in that case the court's comment extended to all healthcare providers, so such an assumption would apply equally to hospital personnel who work at Presence. But more importantly, all we said there was that it was

not an abuse of discretion for the circuit court to consider this. We have never suggested that this should be factored into every *forum non conveniens* analysis, and we do not find that it was an abuse of discretion for the circuit court not to consider this possibility as a point in movants' favor in this case.

¶ 42    Finally, the court considered the 17 lay witnesses who were prepared to testify to Mr. Starr's damages. It agreed with movants that 14 of these witnesses lived closer to Will County and, further, that many of them were spouses who would provide duplicative testimony. The locations of those witnesses thus favored transfer.

¶ 43    Movants do not address these specific categories of witnesses in their briefs. They again make the unsupported assertion that a trial in Will County would "minimize[s] caretaker time away from patients and eliminate staffing disruption at [Presence]." They also insist that the circuit court "virtually ignored" the expenses that witnesses outside of Cook County will incur if the trial in this case is held there. They cite mileage expenses and traffic delays and complain that these witnesses will be unnecessarily subjected to Chicago rates for parking, meal, and lodging expenses. Indeed, movants rely on these same expenses over and over in their brief, asserting them as the reason why a number of the factors should weigh in favor of transfer. These concerns are relevant, but we do not find that they permeate the *forum non conveniens* analysis in the way movants suggest. The circuit court considered these expenses and addressed them specifically when it weighed the cost of obtaining witnesses' attendance at trial rather than as part of its analysis of the relative ease of access to evidence. We believe that was proper and will consider the circuit court's analysis of the expenses in more detail below.

¶ 44                              3. *Other Practical Concerns*

¶ 45    The last private interest factor—"all other practical problems that make trial of a case easy,

14

expeditious, and inexpensive"—is a catch-all category that includes such considerations as "the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises (if appropriate)." *First American Bank*, 198 Ill. 2d at 516.

¶ 46 Here, the circuit court concluded that the availability of compulsory process was a neutral concern, given that Illinois Supreme Court Rule 237 (eff. Oct. 1, 2021) governs efforts to secure the attendance of unwilling witnesses in both Will County and Cook County. Movants do not dispute this.

¶ 47 The circuit court considered it unlikely that the jury would need to view the scene of the negligence alleged in this case and therefore found this to be a neutral concern as well. Because "as a practical matter, a viewing of the site is rarely or never called for in a medical negligence case" (*Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 452 (2008)), we do not agree with movants that the court should have found that this factor favored transfer.

¶ 48 The circuit court then considered the cost of obtaining witnesses' attendance at trial and concluded that it "only slightly favor[ed] transfer to Will County." This is where the court gave express consideration to the costs of commuting and parking. Movants insist that the court ignored considerations like increased traffic congestion and higher costs for lodging and parking in Chicago, which, if properly considered, should have led it to conclude that this subfactor heavily favored transfer. The court did not ignore those costs, however; it simply disagreed with movants' argument that these were all necessary expenses.

¶ 49 The court acknowledged, for example, that parking was significantly more expensive in Chicago ($60 for three hours compared to $3 for three hours in Will County) but did not presume, as movants have, that witnesses would have to drive to Chicago, pay for parking, and stay

overnight in the city. It considered instead the fact that Metra trains run from Joliet, in Will County, to downtown Chicago and that Metra offers a day pass for $10. Because travel by commuter train was "an affordable option for witnesses" that was more expensive than parking in Will County but "not by much," the court concluded this factor only slightly favored transfer.

¶ 50 While the circuit court did not specifically address the cost of downtown Chicago hotels, defendants have offered no evidence that this would be a routine expense for witnesses coming from Will County. Indeed, this court has questioned "whether any relatively close forum could be considered to be inconvenient on an absolute scale given that we live in an age of automobiles, well-paved roads, and commuter rail service." *Evans v. MD Con, Inc.*, 275 Ill. App. 3d 292, 298 (1995); see *Evans v. Patel*, 2020 IL App (1st) 200528, ¶¶ 21, 60 (affirming the denial of a motion to transfer where the circuit court relied, in part, on the fact that "any parking costs could be eliminated by use of the commuter train").

¶ 51 One other practical consideration the circuit court considered was the location of the attorneys in this case. It observed that, according to the filings, one firm was located in Champaign County and two others were located in Cook County. As the circuit court noted, this factor slightly favored plaintiffs' choice of forum. This is a proper consideration in a *forum non conveniens* analysis, though not a significant one. *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 835 (2006).

¶ 52 In short, we cannot find that the circuit court's consideration of these other practical concerns was an abuse of discretion.

¶ 53                           C. The Public Interest Factors

¶ 54                  1. *The Interest in Deciding Controversies Locally and the Burden*
                          *of Holding a Trial in a County with Little Connection to the Case*

16

¶ 55    The first two public interest factors—"the interest in deciding localized controversies locally" and "the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation" (*First American Bank*, 198 Ill. 2d at 517)—are closely related and so we address them together. The circuit court concluded that these factors favored transfer, based on the fact that the alleged negligence occurred in Will County. The resolution of an action for medical malpractice is of obvious interest to the citizens of the forum where the alleged negligence took place because they rely on the professionals within that county for their own medical care. *Gundlach v. Lind*, 353 Ill. App. 3d 677, 683 (2004).

¶ 56    Movants naturally agree with the circuit court that these factors favor transfer. They insist, however, that the court should have concluded that they *significantly* or *heavily* favor transfer. They argue that "[t]here is not even a tenuous connection between the alleged acts of negligence and Cook County in this matter."

¶ 57    Although the Starrs argue that there is at least a question of fact regarding the extent of defendants' other connections with Cook County, the circuit court found those other potential connections irrelevant to its analysis. So do we. It is well established that "[m]erely conducting business in a county does not affect the *forum non conveniens* issue." (Internal quotation marks omitted.) *Monteagudo v. The Gardens of Belvidere, LLC*, 2023 IL App (1st) 220045, ¶ 53.

¶ 58    However, Cook County residents do have some interest in the outcome of this case. Where, as here, a patient was transferred to Cook County for prolonged treatment that is alleged to have been needed because of medical malpractice, there is a connection between the alleged acts of negligence and the people of Cook County. While this connection is surely less significant than the one with Will County, it is not, as defendants contend, nonexistent.

¶ 59    Moreover, the circuit court recognized that these two public interest factors favored

transfer. What defendants are really arguing is that they should have been given greater weight by the circuit court. But if, as defendants appear to suggest, the locale of the alleged wrongdoing was almost dispositive, our supreme court would not have suggested the number of factors that go into a *forum non conveniens* analysis. The fact that "the transaction or some part thereof" out of which the case arose occurred in a forum is one reason, under our venue statute, that venue will be *proper* in that forum. 735 ILCS 5/2-101 (West 2020). But our supreme court has made clear that a *forum non conveniens* motion, which presumes that there is more than one proper venue, requires a court to look beyond those jurisdictional criteria and consider a number of other factors regarding the relative convenience of the competing fora. *Langenhorst*, 219 Ill. 2d at 441. It has also cautioned that " '[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable.' " *Bland*, 116 Ill. 2d at 227 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981)). We find no abuse of discretion in the circuit court's failure to give these factors more weight.

¶ 60                    2. *Administrative Difficulties Relating to Court Congestion*

¶ 61    The final public interest factor is "the administrative difficulties presented by adding further litigation to court dockets in already congested fora." *First American Bank*, 198 Ill. 2d at 517. The concern underlying this factor is the desire to ensure that the availability of finite judicial resources to the residents of a forum is not diminished by nonresident litigation. *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 121 (1981). In their motion to transfer venue, movants argued that Cook County's docket was "highly crowded and less expeditious when compared to Will County."

¶ 62    The annual report of the Administrative Office of the Illinois Courts is generally regarded as a proper reference in assessing court congestion. *Washington v. Illinois Power Co.*, 144 Ill. 2d

395, 403 (1991). Here, the circuit court considered the data included in the 2020 report relied on by movants. It also took judicial notice of more recent data from the 2021 report. Within the category of law division jury cases where more than $50,000 was sought, the court looked at the average time between the filing of a case and the date a verdict was reached. Cook County tried 47 cases within that category in 2021 and disposed of such cases within an average of 43.4 months. See Adm. Office of Ill. Courts, 2021 Statistical Summary, at 81 (2021), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/54868468-989e-45f4-8bb8-c3882ed3b175/2021%20Annual%20Report%20Statistical%20Summary.pdf [https://perma.cc/NH7H-NQUE]. Will County had 6 such cases during that same time period and disposed of them within an average of 57.6 months. *Id.* Observing that Cook County had substantially more cases but nevertheless disposed of them faster than Will County, the circuit court concluded that this factor disfavored transfer but bore "little weight."

¶ 63    Movants do not contest the accuracy of these figures. They instead fault the court for focusing on the average length of time between filing and disposition, rather than the relative backlog of cases in each county. By that measure—and again focusing on law division jury cases where more than $50,000 was sought—Cook County had 21,524 cases pending in 2021, compared to Will County's 1553. *Id.* at 40, 44. These numbers alone do not signify anything, however, as Cook County is more populous and employs more judges. Data like this is only meaningful in terms of how long it took to resolve the backlog. As the numbers cited make clear, Cook County resolved these cases more quickly than Will County.

¶ 64    In their reply brief, movants also fault the court for relying on data from 2021, "a year in which the State of Illinois faced a global pandemic," and for which the data "likely did not accurately reflect statistics for its counties during non-pandemic times." They fail to explain why

the 2020 data, which they themselves relied on, was not similarly compromised. In any event, the pre-pandemic data, which was also available to the circuit court, and which we may take judicial notice of (see *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 727 (2009) (noting that this court may take judicial notice of information that is readily verifiable from sources of indisputable accuracy)), shows that what the court observed here was true before the pandemic as well: Cook County tried many more law division cases to jury verdicts but was able, given its resources, to do so significantly faster than Will County. In 2019, for example, Cook County tried 336 law division jury cases where more than $50,000 was sought and reached a verdict in an average of 29.9 months. See Adm. Office of Illinois Courts, 2019 Statistical Summary, at 71 (2019), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/9ce1588a-09e6-419e-93de-dcc585cf2e4a/2019_Statistical_Summary.pdf [https://perma.cc/779G-ABBS]. Will County tried 15 such cases and did so in an average of 39.1 months. *Id.*

¶ 65    We find no abuse of discretion in the circuit court's assessment of the data or its conclusion that this factor disfavored transfer. We also agree with the circuit court that this factor is entitled to relatively little weight in the overall balancing of private and public interest factors. See *First American Bank*, 198 Ill. 2d at 517 (noting that "[c]ourt congestion is a relatively insignificant factor).

¶ 66                D. The *Forum Non Conveniens* Unequal Balancing Test

¶ 67    The circuit court determined that when considered together, the private and public interest factors did favor transfer to Will County. But that was not enough. The *forum non conveniens* analysis employs an "unequal" balancing test, with "the battle over forum begin[ning] with the plaintiff's choice already in the lead." *First American Bank*, 198 Ill. 2d at 521. To override the Starrs' choice, it was movants' burden to show that the balance of factors *strongly* favored transfer

20

to their chosen forum. *Dawdy*, 207 Ill. 2d at 177. That is true even where, as in this case, the plaintiffs did not reside in the chosen forum and the alleged negligence did not occur there. See *Elling*, 291 Ill. App. 3d at 318 (noting that "the test is still whether the relevant factors, viewed in their totality, strongly favor transfer to another forum"). Although "broad discretion is vested in the [circuit] court in determining whether particular circumstances require transfer of a cause under *forum non conveniens*" (*Bland*, 116 Ill. 2d at 223), our supreme court has warned that this power should "be exercised only in exceptional circumstances" (emphasis omitted) (*Langenhorst*, 219 Ill. 2d at 442). It was not an abuse of discretion for the circuit court to conclude that such circumstances did not exist here.

¶ 68    Counsel for movants insisted at oral argument in this appeal that there was no situation in which less deference should be accorded to the plaintiffs' choice than that presented here. But this court recently reversed the circuit court's denial of a motion to transfer venue in *Monteagudo*, 2023 IL App (1st) 220045, ¶ 53, which offers a scenario in which less deference to the plaintiff's forum choice may well have been appropriate.

¶ 69    The plaintiff in *Monteagudo* sued in Cook County, though she and the decedent's family were from Boone County, defendants were from Boone County and Winnebago County, and the alleged negligence took place in Boone County. *Id.* ¶ 9. The plaintiff in *Monteagudo* was transferred for follow-up care to a hospital in Winnebago County, which was much closer to the Boone County courthouse than to Cook County. *Id.* ¶ 11. And there, all four defendants jointly moved for a transfer of venue. *Id.* ¶ 8. In contrast, in this case, extensive follow up care was provided in a Cook County hospital where the plaintiff had been sent by a doctor at Presence, the distance between the counties at issue is much less, and only three of the seven defendants have sought transfer.

¶ 70     To be clear, however, two judges presented with the very *same* facts could weigh the relevant factors differently and arrive at opposite results. Under the deferential standard of review applied in these cases, both decisions would be upheld on appeal unless it could be said that no reasonable person would conclude as those circuit courts did. *Dawdy*, 207 Ill. 2d at 177. Another result in this case is certainly conceivable, particularly given the diminished deference afforded to the Starrs' choice of forum due to the fact that the alleged malpractice occurred solely in Will County. But our role is to determine whether the circuit court abused its discretion when it denied the motion to transfer, not to reweigh the factors and decide the issue anew. *Patel*, 2020 IL App (1st) 200528, ¶ 60. Based on our review, we cannot say the circuit court's decision was so unreasonable that no court would take its position.

¶ 71                                    IV. CONCLUSION

¶ 72     For all of the above reasons, the circuit court's order denying movants' motion to transfer this case to Will County is affirmed.

¶ 73     Affirmed.

---

*Starr v. Presence Central & Suburban Hospitals Network*, 2024 IL App (1st) 231120

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-12506; the Hon. Moira S. Johnson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Thomas B. Borton and Tammy S. Warden, of Livingston, Barger, Brandt & Schroeder, LLP, of Champaign, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael W. Rathsack, of Park Ridge, and Bridget Duignan, of Latherow & Duignan, of Chicago, for appellees. |

---