2025 IL App (1st) 240418

SECOND DIVISION
December 30, 2025

No. 1-24-0418

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PERRY SEILHEIMER and MELANIE SEILHEIMER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 23 L 4901 |
| | ) | |
| NEILS OLSEN, | ) | Honorable |
| | ) | John A. Simon |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     This case involves a car accident in Lake County. Plaintiffs, Lake County residents, sued defendant Neils Olsen in Cook County, his home county. Defendant filed a *forum non conveniens* motion to transfer the case to Lake County. The circuit court granted the motion.

¶ 2     We reverse. Defendant did not carry his burden of demonstrating that Cook County was inconvenient. He did not demonstrate that this was that rare, exceptional case where the balance of factors strongly favors transfer.

¶ 3                                      BACKGROUND

¶ 4     In October 2021, defendant and plaintiffs, Perry and Melanie Seilheimer, were involved in a vehicle collision at an intersection in unincorporated Lake County, Illinois. According to the police report from the accident, Defendant, who admitted he "was distracted by thoughts of his

boat" while driving, entered the intersection out of turn and "t-boned" plaintiffs' car. Though the record is vague, it appears that Perry required surgery to repair an injury to his shoulder.

¶ 5     Defendant received a ticket for failure to reduce speed to avoid an accident, to which he pled guilty. Defendant resides in Evanston, a city on Chicago's northern boundary in Cook County, Illinois. Plaintiffs reside in Round Beach, located in Lake County, Illinois.

¶ 6      In May 2023, plaintiffs sued defendant in Cook County to recover for injuries sustained in the accident. Defendant moved to transfer the case to Lake County under the doctrine of *forum non conveniens.* Defendant argued that the "litigation's only connection to Cook County Illinois is that Defendant resides within Cook County." He primarily argued that transfer was necessary because the accident occurred in Lake County, it was investigated by Lake County sheriffs, and all of Perry's medical treatment occurred in Lake County.

¶ 7     The circuit court found these arguments persuasive. In its written order, the court went through the relevant private and public factors. First, it concluded that plaintiffs' choice of forum was entitled to less deference because they filed in a foreign forum. Next, on the convenience of the parties, the court noted that plaintiffs live "9 minutes from the Lake County Courthouse, and 1 hour 50 minutes from the Daley Center." By contrast, "[a]lthough [defendant] resides in Cook County, the driving time to Lake County Courthouse is shorter than if [defendant] were to drive to the Daley Center. [Defendant's] residence is around a 45 minute drive from the Lake County Courthouse, but over an hour away from the Daley Center."

¶ 8     Next, the court accepted defendant's argument that Cook County was inconvenient to the relevant witnesses in this case. Particularly, "if the law enforcement officers were required to travel to Cook County, their ability to do their job would be greatly diminished than if this case were to proceed in Lake County." On the question of documentary evidence, the court

recognized that, with the advent of electronic records, the location of medical records weighs less in the consideration of the motion. To round out its analysis of the private factors, the court found "that a trial in Lake County would likely ease the parties' access to all sources of evidence, decrease the cost of litigation, and expedite resolution of their claims."

¶ 9    On the public side of the balancing test, the court concluded that Cook County had no interest in resolving this case and that it would "unfairly impose the expense of trial and jury duty on resident's [*sic*] of Cook County." Finally, citing the AOIC Annual Report for 2021, it found that Lake County had fewer cases than Cook. Based solely on the number of cases, it found that Cook County was "by far more congested than Lake County."

¶ 10    The court found "that the balance of private and public interest factors strongly favors transferring this case to Lake County." We granted plaintiffs' timely petition for review of the order under Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020).

¶ 11                                    ANALYSIS

¶ 12    The doctrine of *forum non conveniens* is not a question of jurisdiction but one of convenience; "the defendant bears the burden of showing that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties." *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 20. Circuit courts have discretion in deciding *forum non conveniens* motions, and we will reverse their rulings only when they abuse that discretion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006); *Fennell*, 2012 IL 113812, ¶ 15.

¶ 13    That said, plaintiffs have a substantial right to select the forum, and their choice should "rarely be disturbed." *Fennell*, 2012 IL 113812, ¶ 18. Our supreme court has repeatedly noted that this discretionary transfer authority "should be exercised only in exceptional circumstances."

*Langenhorst*, 219 Ill. 2d at 442; see also *First American Bank v. Guerine*, 198 Ill. 2d 511, 520 (2002). So our examination of the relevant factors is an "unequal balancing test" that favors the plaintiff's choice. *Guerine*, 198 Ill. 2d at 521. The defendant must show that the balance of interests "strongly favors" transfer. *Fennell*, 2012 IL 113812, ¶ 17.

¶ 14    In considering whether to transfer a case, the court balances several private and public interest factors. The private factors include: the convenience of the parties; ease of access to evidence; and practical considerations such as the availability of compulsory process for unwilling witnesses; the cost of obtaining attendance of willing witnesses; and the possibility of viewing the premises, if appropriate. *Fennell*, 2012 IL 113812, ¶ 15. For public interests, we consider: the administrative congestion of the chosen forum; the unfairness of imposing jury duty on residents in a community with no connection to the dispute; and the interest in having local controversies decided locally. *Id.* ¶ 16.

¶ 15    Our deference to the plaintiff's choice varies. If the plaintiff files suit in her home forum or where the injury occurred, her choice receives substantial deference. *Id*. If, as here, the chosen forum is neither the site of the accident nor plaintiff's home, her choice receives " 'somewhat less deference.' " *Langenhorst,* 219 Ill. 2d at 442-43 (quoting *Guerine*, 198 Ill. 2d at 520).

¶ 16    But " ' "the deference to be accorded is only *less,* as opposed to *none*." ' " (Emphases in original.) *Id*. (quoting *Guerine,* 198 Ill. 2d at 518, quoting *Elling v. State Farm Mutual Automobile Insurance Co.,* 291 Ill. App. 3d 311, 318 (1997)). The plaintiff's choice of forum still begins "in the lead." *Guerine*, 198 Ill. 2d at 521; see *Foster*, 2016 IL App (5th) 150055, ¶ 31 ("under the unequal balancing test, the battle over forum starts with the plaintiffs' choice of forum in the lead."). In most instances, the plaintiffs' choice of forum " 'will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the

plaintiff's substantial right to try the case in the chosen forum.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 520).

¶ 17    Again, "the defendant bears the burden of showing that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties." *Fennell*, 2012 IL 113812, ¶ 20. The circuit court found that Cook County was inconvenient to defendant, and that Lake County was more convenient to all parties, strongly favoring a transfer to Lake.

¶ 18                                     I. Private Interest Factors

¶ 19                                     A. Convenience of Parties

¶ 20    We begin with the first private factor, the convenience of the parties, and the obvious note that Cook and Lake Counties abut one another. That does not provide a death knell for defendant, as no single factor is dispositive in this analysis, and transfers to contiguous counties have been upheld. Still, in another case involving adjacent counties, our supreme court wrote:

> "We discern no inconvenience for the defendants to try this case in St. Clair County when Clinton and St. Clair Counties are adjacent, and travel distances for likely witnesses are minimally different. When adjoining counties are involved, " ' "[t]he battle over the forum results in a battle over the minutiae." ' " *Langenhorst,* 219 Ill. 2d at 450 (quoting *Guerine,* 198 Ill. 2d at 519-20, quoting *Peile v. Skelgas, Inc.,* 163 Ill. 2d 323, 335 (1994), quoting *Peile v. Skelgas, Inc.,* 242 Ill. App. 3d 500, 522 (1993) (Lewis, J., specially concurring)).

¶ 21    As for plaintiffs' convenience to their chosen forum of Cook County, our supreme court has consistently held, verbatim each time, that defendants seeking a transfer "cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff." *Fennell*, 2012 IL 113812, ¶ 20; *Langenhorst,* 219 Ill. 2d at 444; *Guerine*, 198 Ill. 2d at 518. Thus, to the extent that the circuit

court calculated the distance from plaintiffs' residence to Cook County's courthouse at the Daley Center, we disregard it. Indeed, our supreme court presumed convenience to the plaintiff when he lived 530 miles from his chosen forum in St. Clair County, Illinois. See *Fennell*, 2012 IL 113812, ¶ 27.

¶ 22    As for defendant's convenience to the chosen forum, this case presents the odd circumstance where a defendant is left to claim that the county in which he resides is inconvenient to him. Our supreme court has found it "all but incongruous for defendants to argue that their own home county is inconvenient." *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555 (1992). See also *Johnson*, 2019 IL App (1st) 180840, ¶ 45 ("defendants-appellants cannot be heard to complain that their home forum is inconvenient"); *Foster v. Hillsboro Area Hospital, Inc.*, 2016 IL App (5th) 150055, ¶ 35 (defendants' "arguments suggesting that their home county is inconvenient are not well taken"); *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 658 (2009) (rejecting Boeing's contention that Cook County was inconvenient where "defendant Boeing has its headquarters in plaintiffs' chosen forum."); *Kowalczyk v. Illinois Central Railroad Co.*, 2021 IL App (1st) 210206-U, ¶ 15 (same).

¶ 23    Nevertheless, the circuit court concluded that defendant "has shown that Cook County is not convenient for him." For that conclusion, the circuit court gave but one reason: its calculation that defendant's home in Evanston "is around a 45 minute drive from the Lake County Courthouse, but over an hour away from the Daley Center."

¶ 24    We have several issues with the court's finding, not the least of which is that its calculation does not prove that Cook County is inconvenient for defendant. At best, given its most generous interpretation, it proves that Lake County is slightly more convenient than Cook if defendant were ever to travel by car to attend court hearings. And we mean slightly; fifteen

minutes' difference in travel time does not strike us as a significant delta. It feels more like "a battle over the minutiae." *Langenhorst,* 219 Ill. 2d at 450 (internal quotation marks omitted).

¶ 25     We also note that the circuit court did not source its finding. A court may judicially notice the mileage and route from one location to another via a reliable source. See *Fennell*, 2012 IL 113812, ¶ 27 n.3; *Dawdy v. Union Pacific Railroad Co.*, 207 Ill. 2d 167, 177 (2003). But defendant did not provide the court with that information; the court apparently came up with this information on its own. Presumably, the court was not making an anecdotal observation and used a reliable online source such as Google Maps. When the court conducts its own fact-finding on a matter of judicial notice, best practices would dictate that the circuit court identify its source.

¶ 26     In any event, it's an imprecise exercise to calculate time rather than distance; the mileage between two locations is static, but the travel time from one location to another in metropolitan areas like Cook and Lake Counties can vary wildly based on the day of the week and the time of day. A weekday trip at 8:00 am rush hour would surely take longer than one at 2:00 am or a Saturday morning drive. It is likely for this reason that, when discussing distances for parties or witnesses in a forum non *conveniens* appeal, our supreme court has typically looked at mileage, not travel time. See, *e.g.*, *Fennell*, 2012 IL 113812, ¶ 27; *Dawdy*, 207 Ill. 2d at 170; *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 113 (1990); *Foster v. Chicago & North Western Transportation Co.*, 102 Ill. 2d 378, 381 (1984).

¶ 27     We understand the significance of a time calculation—congestion on a road can make a shorter distance a longer ride, and Chicago is known for its congestion, particularly at certain times of the day and certain days of the week. But that is another issue with the court's finding. We do not know what time of day or which day of the week the court conducted its research. We do not even know if the court calculated the *same* day and time for the trips to the different

courthouses. We would have none of these problems had the court calculated distance instead of travel time. We presume the court did its best to provide relevant and accurate information, but the lack of foundational information leaves us with a less than pristine finding.

¶ 28    Plaintiffs, for their part, asked us to judicially notice Google Maps they submitted to this court. Defendant did not object, and we granted that motion. See *Dawdy*, 207 Ill. 2d at 177 (" 'an appellate court may take judicial notice of matters not previously presented to the trial court when the matters are capable of instant and unquestionable demonstration.' ") (quoting *Boston v. Rockford Memorial Hospital*, 140 Ill. App. 3d 969, 972 (1986)).

¶ 29    Those Google Maps show that the distance from defendant's home to the Lake County Courthouse in Waukegan, traveling north via Interstate 94, is 27.2 miles, while the distance from his residence to the Daley Center, taking the same highway southbound, is 18.6 miles. So defendant actually lives closer to Cook County's courthouse. The notion that Cook County is an inconvenient forum to defendant becomes more tenuous still.

¶ 30    These Google Maps estimated the travel times from defendant's home as 31 minutes to the Daley Center and 41 minutes to the Lake County Courthouse—a significantly different number for the Daley Center than the trial court's calculations. We say again, those times, by themselves, would vary greatly based on the time of day and day of the week for which they were calculated. So we take them with the same grain of salt as the trial court's calculations. But that only underscores our issues with the circuit court's findings.

¶ 31    Elsewhere in its analysis, the circuit court noted that travel to Cook County involved other inconveniences such as costs associated with parking and the overall stress of having to navigate a busy area. But as plaintiffs rightly note, it is for those reasons, among others, that many people who live in and around Chicago travel into the city by train.

¶ 32 Plaintiffs' Google Maps and documentation show that defendant lives only a mile from the Union Pacific North Line Central Street station, which estimates a 31-minute ride into the Ogilvie Train Station in downtown Chicago. And defendant lives 1.6 miles from a CTA "Purple Line" train station that transports riders from Evanston to downtown Chicago. Defendant, who carries the burden of proving that the Cook County forum would inconvenience him, did not submit an affidavit swearing as much or explaining which mode of transportation he would use.

¶ 33 And we cannot ignore the prevalence these days of conducting pretrial hearings remotely, obviating the need for defendant to appear personally in court, if he were so inclined, for the many hearings that typically precede trial. As our supreme court has posted on its website, "remote appearances should not be viewed as merely temporary COVID-induced measures," as they "constitute a boon not only to self-represented litigants but also attorneys and other court participants who have reaped numerous benefits."[1]

¶ 34 Indeed, our supreme court has adopted rules, soon to take effect, that will only encourage this rapidly growing trend. Illinois Supreme Court Rule 45 (amended Dec. 2, 2025, eff. Mar. 1, 2026) provides that "[c]ase participants shall be permitted to attend court via the circuit court's available remote appearance technology without any advance approval," with exceptions for trials, evidentiary hearings, and the like. And even for those more involved hearings, the trial court may "allow a case participant to testify by video conference for good cause shown and upon appropriate safeguards." Ill. S. Ct. R. 241(b) (amended Dec. 2, 2025, eff. Mar. 1, 2026).

¶ 35 Remote hearings have become sufficiently prevalent in Cook County that the circuit court posts online information about remote hearings on Zoom, including assigned session IDs and

---

[1] See Illinois Supreme Court Website, https://www.illinoiscourts.gov/courts/additional-resources/remote-proceedings/ (last accessed Dec. 12, 2025).

passcodes for each individual courtroom.[2]

¶ 36    The more remote hearings take hold, the less important physical travel to courthouses for lawyers and clients becomes. Defendant could easily attend most pretrial hearings at the Daley Center without ever leaving his home.

¶ 37    All in all, we are not persuaded that defendant carried his burden of demonstrating that litigation in Cook County would be inconvenient to him.

¶ 38    As for defendant's suggested forum, we certainly agree that Lake County would be convenient for plaintiffs, who live only miles from the Lake County courthouse in Waukegan. And given that we see only a negligible difference for defendant in traveling to the two courthouses, we likewise agree that litigation in Lake County would not be inconvenient for him. But given everything we have said above, the convenience factor does not favor, much less strongly favor, a transfer to Lake County.

¶ 39                                B. Ease of Access to Evidence

¶ 40    The court found that the next private factor, the relative ease of access to evidence, strongly favored transfer, too. We do not agree. To be sure, the accident occurred in Lake County, plaintiff was treated there, and the investigating officer was a Lake County deputy sheriff. But several factors militate against finding that this factor favors transfer.

¶ 41    For one, in the age we are living, it is difficult for us to imagine that access to evidence would be any more difficult if the case remained in Cook County than if it were litigated in Lake County. This is a negligence case involving a car accident, so this is not a document-intensive case; the only significant documentation is plaintiff's medical records.

---

[2] See https://ocj-web-files.s3.us-east-2.amazonaws.com/documents/Law-Zoom-Info_2025-08-22.pdf?VersionId=zR8jBXJrgrkS9hcMiPjAPdcBWyi00nsj (site last visited December 12, 2025).

¶ 42    We will not entertain the fiction that lawyers will travel to physicians' offices to review those records; those records will be distributed electronically. See *Fennell*, 2012 IL 113812, ¶ 36 (recognizing that technology has made document production a "less significant factor"). " 'It has become well-recognized by our courts that given our current state of technology (including e-mail, Internet, fax and copying machines) documentary evidence can be copied and transported easily and inexpensively.' " *Milton v. Boeing Co.*, 2023 IL App (1st) 220647, ¶ 56 (quoting *Erwin*, 408 Ill. App. 3d at 281) (parenthetical in original)); see *Hayes v. Fireman's Fund Mortgage Corp.,* 272 Ill. App. 3d 271, 278 (1995) ("[t]he location of the documents is becoming an increasingly less significant factor in the *forum non conveniens* analysis").

¶ 43    And what has been true of documents for over twenty years is now true of witnesses, too. We would expect that most, if not all the depositions of these treating physicians (and the sheriff's deputy) would be conducted remotely via virtual technology, rendering their physical location utterly irrelevant. See Ill. S. Ct. R. 206(g), (h) (eff. Oct. 1, 2021) (permitting video and remote depositions). Depositions that allow lawyer and deponent to view each other face-to-face and even share and discuss documents over a computer, while avoiding the expense and time of travel, have clearly become a preferred option. To use a buzzword prevalent in this area of the law, they have become a *convenient* option.

¶ 44    The parties to this action have found it convenient, as they should. In our record is a notice of deposition for one of the plaintiffs, to be conducted remotely "via Zoom or other remote disposition technology." Among other things, the notice requires that counsel ensure that the deponent is connected to a device that "allows the deponent to view exhibits presented via screen sharing." So the parties here have already availed themselves of technology that allows them to question and review documents with deponents without the need to meet in person.

¶ 45    Should this matter advance beyond pretrial discovery to trial, as we have noted, our new supreme court rules will permit remote testimony on good cause shown. See Ill. S. Ct. R. 241(b) (amended Dec. 2, 2025, eff. Mar. 1, 2026). It would not be surprising if the parties chose that option for some or all of the treating physicians, regardless of which county hosts this lawsuit.

¶ 46    Defendant proffered no evidence that any witness would object to or be inconvenienced by litigation in Cook County. As noted, defendant did not even swear as much in his own affidavit, must less did any other witness. See Ill. S. Ct. R. 187(b) (eff. Jan. 1, 2018) (forum *non conveniens* motions may be supported by affidavit); *Langenhorst,* 219 Ill. 2d at 450 ("In this case, no affidavits have been filed stating that St. Clair County would be an inconvenient forum for any of the witnesses."); *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 50 ("defendant has not identified on this appeal a single witness by name who would be unwilling to testify" in plaintiff's chosen forum); *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008) ("we find it notable that, like the movants in *Langenhorst,* Raymond failed to provide affidavits from any of the identified witnesses stating that Cook County is an inconvenient forum.").

¶ 47    Nor has defendant provided evidence by affidavit or otherwise of the specific locations of these treating physicians, where the particular sheriff's deputy is stationed, or their distance from the Daley Center; all we know is that they all work in Lake County. We might presume that wherever they are located in Lake County, they are probably closer to the Lake County courthouse than the Daley Center. But by how much, we do not know. Based on everything we have seen in this case, it feels safe to surmise that the difference in their travel times to the Lake County courthouse versus the Daley Center would be measured in minutes, not hours—again, "a battle over the minutiae." *Langenhorst,* 219 Ill. 2d at 450 (internal quotation marks omitted); see *Foster*, 2016 IL App (5th) 150055, ¶ 39 ("Dr. Kietzman's claim that an additional 25 miles of

travel to Madison County would impose a significantly greater hardship [than trial in neighboring county] is disingenuous."). If our suppositions are incorrect, it was incumbent on defendant to prove otherwise, as the burden at all times lies with him.

¶ 48    Still, we acknowledge that if this matter went to trial, some of these witnesses (the sheriff's deputy and the treating physicians) might be required to travel to Cook County. There is no doubt that if a treating physician were called to testify, his or her schedule would be interrupted. But "[t]he reality is that their schedules for delivering patient care will be interrupted whether the case is tried in [plaintiff's chosen forum] or [defendant's suggested, neighboring forum]." *Foster v. Hillsboro Area Hospital, Inc.*, 2016 IL App (5th) 150055, ¶ 46. Predicting, with any accuracy, the schedule of a trial is a hazardous exercise, indeed. "The court invariably faces interruptions and delays during a longer trial, often requiring witnesses to idle in the hallways." *Id.*

¶ 49    For this reason, as a practical matter, a physician, who likely schedules patient appointments in advance, would almost assuredly block a day open, free of patient care, for a scheduled day of testimony, having no real ability in advance to predict with any confidence when, precisely, her testimony will begin and when it will end. Nor would anyone involved in trial work deny the possibility that the physician, originally scheduled to testify on a Thursday, might not be called until the following Monday, given various unexpected delays in the trial. With this in mind, the extra minutes it would take that physician to travel to the Daley Center, compared to the Lake County courthouse, plays the smallest of roles in this scheduling problem. It is "*the fact of trial,* rather than *the place of trial,* [that] is inconvenient for them." (Emphasis in original.) *Id.*

¶ 50    We cannot uphold the circuit court's finding that this second factor strongly favors

transfer, or that it favors transfer at all.

¶ 51                          C. Other Practical Considerations

¶ 52     The final private factor is a catch-all of any practical considerations such as the availability of compulsory process for unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and any other factors that would affect the convenience or efficiency of the trial.

¶ 53     The court mentioned the availability of viewing the crash site and compulsory process for securing witnesses. As for compulsory process, for intrastate transfers, as here, compulsory process is nearly a non-issue, as process is available in each county. See *Evans*, 2020 IL App (1st) 200528, ¶ 44. The court spent a bit more time on the possibility of viewing the crash site. Our supreme court has written that the site-visit analysis "is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate." *Dawdy*, 207 Ill. 2d at 178. So however unlikely it may seem that the parties would visit the crash site, we must consider that possibility.

¶ 54     It would help to know the distance from the accident site to the respective courthouses. Defendant claimed below that the accident site was "approximately 62.8 miles" from the Daley Center. But he provided no citation or source for that calculation. We may judicially notice items that are readily accessible and available, as we have said—but it should go without saying that parties cannot simply state facts to us without citing the source.

¶ 55     Defendant did not advise us (or the circuit court) of the distance between the crash site and the Lake County courthouse. We presume that Lake County's courthouse is closer to the site than the Daley Center, but it's difficult to compare the relative convenience of the courthouses

without knowing the complete picture. Still, on this particular point of viewing the accident site, the court was within its discretion in finding that it favored transfer to Lake County.

¶ 56    But on balance, we cannot uphold the conclusion that the private factors strongly favor transfer to Lake County—or that they favor transfer at all. Any inconvenience to defendant is negligible at best. Pretrial discovery is unlikely to be affected, whether the litigation is based in Cook County or Lake County. Defendant did not demonstrate any measurable inconvenience to himself or to any other witnesses should the case remain in Cook County.

¶ 57                                II. Public Factors

¶ 58    We now turn to the public interest factors. The court combined the first two of these— deciding controversies locally and imposing the burden of a jury trial. In its view, citing a decision of this court, Cook County had absolutely no interest in this case because it occurred outside the county. From that, the court concluded that it would be "unfair" to impose the burden of jury trial "on resident's [sic] of Cook County who have no connection to the case."

¶ 59    We agree that Lake County has a stronger connection to this case, but we disagree that Cook County has no connection. The circuit court relied on *Kahn v. Enterprise Rent-A-Car Co.*, 355 Ill. App. 3d 13, 15-16 (2004), a case filed in Cook County concerning a car accident in DuPage County. This court found that "Cook County has little or no interest in trying the action of a nonresident whose claim is based on negligence occurring in another county." *Id*. at 28.

¶ 60    Fair enough, but the defendants there did not reside in Cook County. The driver of the rental car resided in DuPage County (*id*. at 23), and there was no claim that the rental-car company, Enterprise, was a resident of Cook County, only that it "does business in Cook County" (*id*. at 27), which we rejected because that merely satisfied the minimal requirement for the venue statute and was irrelevant to convenience. *Id*. (citing *Dawdy,* 207 Ill. 2d at 182).

¶ 61    Even *Dawdy*, 207 Ill. 2d at 183, on which *Kahn* relied, supports the conclusion that bringing suit in a defendant's home county is a weighty consideration. There, plaintiff sued defendants (a driver and his employer) over a car crash in Macoupin County. *Id*. at 169. Plaintiff sued in neighboring Madison County. *Id*. The plaintiff lived in Green County, the defendant driver lived in Macoupin County, and the employer, "a Delaware corporation with its principal place of business in Omaha, Nebraska," did business in both Madison and Macoupin Counties. *Id*. This court found that the original place of suit—Madison County—had an interest because the employer did business there. *Id*. at 182. Our supreme court rejected that conclusion. *Id*. In concluding that Macoupin County had the much stronger interest, our supreme court noted that it was where the accident occurred *and where the defendant truck driver lived*. *Id*. at 183.

¶ 62    Here, defendant is not a company that merely does business in Cook County and has branches in other nearby counties; he is an individual who lives here. It is simply wrong to claim that Cook County has no interest in a negligence suit against one of its residents. See *Foster*, 2016 IL App (5th) 150055, ¶ 55 (even though alleged malpractice occurred in neighboring county, "the residents of Madison County have a real and genuine interest in considering allegations of medical negligence involving two of its residents").

¶ 63    In *Kwasniewski*, 153 Ill. 2d at 552, our supreme court upheld the denial of a transfer from the defendant's home county to the site of the accident. A Cook County resident sued a McHenry County resident in the defendant's home county, McHenry, over an accident in Wisconsin. *Id*. Defendant argued that Wisconsin had a far greater interest in the case, as it was the site of the accident. *Id*. at 555. With brevity boarding on dismissive, the court stated: "The second public interest factor cited by the defendants is that of place. While the place of the accident is a significant factor, *it also carries less weight than the plaintiffs' choice of forum in the county of*

*defendants' residence*." (Emphasis added.) *Id*.

¶ 64     The final factor is the congestion of the respective court dockets, which our supreme court has deemed "the least significant of the public interest factors." *Id*. Indeed, the high court has advised us that "[c]ourts should be extremely reluctant to dismiss a case from the *forum rei gestae* merely because that forum's docket has a backlog; and this factor is entitled to almost no weight without evidence to show that the court calendar in another forum would resolve the dispute more expeditiously." *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986).

¶ 65     We are not persuaded the circuit court relied on competent evidence. Its order cited the number of cases in Lake County versus Cook. Unsurprisingly, Cook County had a vastly larger "Law Jury" docket than Lake County—21,524 to 1,553. The court's analysis stopped there.

¶ 66     No doubt, Cook County has many more cases, but it also has many more *judges*. Per their respective websites, the circuit court of Cook County has "approximately 400 judges," while the circuit court of Lake County has 41 ("16 circuit judges" and "25 associate judges").[3]

¶ 67     The proper consideration of this factor is not the number of cases alone but the efficiency with which the court handles those cases. *Dawdy*, 207 Ill. 2d at 181; see *Kashirsky v. Presence Central and Suburban Hospitals Network*, 2024 IL App (1st) 230060-U, ¶ 30. We are not saying that Cook County is more efficient than Lake County. In fact, the most recently available AOIC statistics show that Lake County is one of the most efficient court systems in Illinois, but it does not contain any such information for Cook County.[4]

---

[3] See Circuit Court of Lake County website, https://www.19thcircuitcourt.state.il.us/1480/Judges-of-Lake-County (site last visited December 12, 2025); Circuit Court of Cook County website, https://www.cookcountycourtil.gov/about/organization-court#:~:text=The%20Circuit%20Court%20of%20Cook,cases%20are%20filed%20each%20year (site last visited December 12, 2025).

[4] We may take judicial notice of the Administrative Office of Illinois Courts annual reports. *Dawdy*, 207

¶ 68     We cannot agree that the "congestion" factor strongly favors transfer.

¶ 69     In sum, the court abused its discretion in finding that the unequal balancing test of the private and public factors strongly favors transfer to Lake County. Defendant has not demonstrated inconvenience to himself or to the witnesses in this matter. We acknowledge that Lake County is the site of the accident and has a stronger interest than Cook County in its resolution, but we do not agree that these points result in the conclusion the circuit court reached.

¶ 70     The question should not be, and is not, whether Lake County would be a convenient forum. It would. But if we are to heed the constant admonitions from our supreme court that the plaintiff's choice is entitled to at least some deference, and that it is the rare case that should result in a transfer, we cannot uphold the transfer order here. Modern technology has rendered the location of the forum far less consequential, and here these two counties abut one another, so travel distances are minimal, measured in minutes, not hours. Even if Lake County would be a sensible choice for a forum, and even if it might make more sense than Cook County if the choice were ours, under no circumstances could we say that the balance of factors strongly favors transfer to Lake so as to upset plaintiffs' substantial right to choose a forum.

¶ 71                              CONCLUSION

¶ 72     The judgment of the circuit court is reversed. The cause is remanded for further proceedings.

¶ 73     Reversed and remanded.

---

Ill. 2d at 181. The most recently available 2023 AOIC Report does not include the relevant statistics from Cook County for reasons that are unclear to this court.

*Seilheimer v. Olsen*, 2025 IL App (1st) 240418

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-L-4901; the Hon. John A. Simon, Judge, presiding. |
| **Attorneys for Appellant:** | Mark J. Vogg, of the Law Offices of Thomas J. Popovich, P.C., of McHenry, for appellant. |
| **Attorneys for Appellee:** | Lori A. Vanderlaan and Devin Farrow, of Best, Vanderlaan & Harrington, of Chicago, for appellee. |