2026 IL App (1st) 250608-U

FIRST DIVISION
February 23, 2026

No. 1-25-0608

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| DANIEL O'BRIEN, Independent Administrator of the Estate of Kimberly O'Brien, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 2022 L 003685 |
| ADVANCED UROLOGY ASSOCIATES, S.C., a Corporation; CARRIE DEFUSS, D.N.P.; SANDEEP SAWHNEY, M.D.; and SILVER CROSS HOSPITAL AND MEDICAL CENTERS, a Corporation, | ) ) ) ) ) ) | |
| Defendants-Appellants | ) ) | The Honorable Michael B. Barrett, |
| (Joseph Cutrone, D.O., Defendant). | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

## ORDER

*HELD*: Trial court's order denying defendants' *forum non conveniens* motion seeking transfer of this matter to Will County from plaintiff's chosen forum of Cook County was proper where the court's evaluation of the relevant factors did not amount to an abuse of discretion.

¶ 1    Defendants-appellants Advanced Urology Associates, S.C., a corporation (AUA); Carrie DeFuss, D.N.P (DeFuss); Sandeep Sawhney, M.D. (Sawhney); and Silver Cross Hospital and Medical Centers, a corporation (Silver Cross) (collectively defendants, or as named) have filed an interlocutory appeal in this Court pursuant to Illinois Supreme Court Rule (Rule) 306(a)(2) (Ill. S. Ct. R. 306(a)(2) (eff. Oct. 1, 2020)), seeking reversal of a trial court order denying their motion to transfer the underlying cause of action from Cook County, Illinois, to Will County, Illinois, pursuant to Rule 187 (Ill. S. Ct. R. 187 (eff. Jan. 1, 2018)). They contend the court abused its discretion when weighing the private and public interest factors of the doctrine of *forum non conveniens* in light of the evidence presented. They ask that we reverse and enter an order transferring the cause. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    In January 2020, the decedent, Kimberly O'Brien, a Will County resident, sought treatment at AUA for urinary discomfort and blood in her urine. Kimberly presented at AUA's offices on Silver Cross' hospital campus, both located in Will County, and was treated by nurse practitioner DeFuss, who believed she was suffering from gynecological and bladder issues. Per DeFuss, Kimberly followed-up with her gynecological and primary care physicians, located in Cook County. She returned to AUA in March 2020 and again saw DeFuss, who remained consistent in her diagnosis. A week later, Kimberly returned to AUA, complaining of pelvic pain, urinary retention and constipation and was seen by Dr. Sawhney. Upon examination, Sawhney discovered issues with Kimberly's urethra, bladder and vaginal walls. Kimberly underwent radiological testing and presented at Silver Cross' emergency room several times over the next month, with notes from her visits sent to Sawhney. During

one such visit, she was seen by Sawhney and Sawhney's resident, Dr. Joseph Cutrone,[1] and a mass was discovered in her bladder.

¶ 4     Kimberly returned to Sawhney at AUA for a follow-up visit, complaining of bladder pain. In April 2020, she returned to Silver Cross and, this time, was admitted. Dr. Luke Cho performed a laparotomy and removed the tumor near her bladder and urethra, the pathology of which revealed she was suffering from urothelial cancer that had metastasized. Kimberly remained at Silver Cross for several weeks and then visited a urologist and an oncologist at Loyola University Medical Center in Cook County. There, she received chemotherapy, radiation, and palliative care. She was placed in hospice and died the next day, June 2, 2020, from metastatic urothelial cancer.

¶ 5     In April 2022, Kimberly's husband, plaintiff-appellee Daniel O'Brien, independent administrator of Kimberly's estate (Daniel), filed a wrongful death and survival action against AUA, DeFuss, Sawhney, and Cutrone in the circuit court of Cook County. AUA, DeFuss and Sawhney filed a motion to dismiss the cause of action based on improper venue, asserting that all the care at issue took place in Will County and none of the defendants lived in Cook County. As venue discovery proceeded and Daniel's initial complaint was amended, Silver Cross was added as a party-defendant and it filed a similar motion to dismiss.

¶ 6     The trial court denied both motions. It noted that there is no dispute that AUA, DeFuss, and Silver Cross are not residents of Cook County, and that Sawhney was not a resident of Cook County at the time the suit was initiated. It found, however, that even though it was

---

[1]Although Dr. Cutrone is a party-defendant below, he did not join in defendants' instant *forum non conveniens* challenge; thus, he is not a party to this appeal.

not his burden, Daniel had "provided evidence that Cutrone actually resided in Cook County when this matter was initiated" while defendants had "not provided any affirmative evidence showing that Cutrone was not a resident of Cook County at the time this lawsuit was filed." Thus, because defendants "failed to show that Cutrone was not a resident of Cook County at the time this lawsuit was initiated," the court held they "failed to show" proceedings in Cook County were improper. The cause was set for trial to begin April 24, 2025.

¶ 7    In August 2024, AUA, DeFuss, and Sawhney together, and Silver Cross separately, filed motions to transfer pursuant to Rule 187 and the doctrine of *forum non conveniens*.[2] Considering the motions jointly, and following briefing, the trial court denied them in a 9-page Memorandum Opinion and Order, which we will discuss in more detail below. Suffice for the moment, the court began by recognizing that, although a plaintiff's choice of forum is to be given considerable deference, here, Daniel's choice of Cook County merited "somewhat less deference" because he neither resides there nor was it the site of the injury. The court then addressed each of the private and public interest factors and applied them to the evidence presented. As for the private factors, while it found the convenience to the parties "weighs slightly in favor of transfer," it concluded that the ease of access to documentary, real and testimonial evidence "weighs neutrally," the cost to obtain the attendance of willing witnesses is minimal, viewing the premises was of "relatively low" importance, and no other relevant considerations bore significant weight to merit transfer. As for the public factors, the court found that any administrative difficulties caused by court

---

[2]By this time, Cutrone had moved to West Virginia and no longer practiced in Illinois; he did not join in the transfer motions nor did he file one of his own.

congestion and the unfairness of imposing jury duty upon residents of Cook County both "weigh[] against transfer," while the interest in having local controversies decided locally "weighs neutrally." Thus, after considering and weighing the factors, the trial court concluded that "defendants have not made the case that Will County is strongly favored over Cook County" and held, pursuant to its denial of the motions, that the cause should proceed as filed by Daniel in Cook County.

¶ 8   Trial was reset to September 25, 2025. In early April 2025, defendants filed the instant Rule 306(a)(2) petition for leave to appeal, which this Court granted.

¶ 9                                   ANALYSIS

¶ 10   On appeal, defendants contend that the trial court abused its discretion in balancing both the private and public interest factors. They assert that the court committed multiple errors in its analysis of each of the factors and in its assessment of the facts in relation to them, inappropriately giving, in their words, "inordinate weight to less important factors" while "fail[ing] to remedy the inconvenience" of a Cook County trial and "fail[ing] to account for the overwhelming interest" Will County had in this matter. Based on the record before us, we disagree.

¶ 11   It is axiomatic that our Court reviews a trial court's decision with respect to a *forum non conveniens* motion pursuant to abuse of discretion. See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21; accord *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006); *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003); *Schuster v. Richards*, 2018 IL App (1st) 171558, ¶ 17 (citing *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 18). Under this most deferential standard, an abuse of discretion occurs only when

no reasonable person would take the view adopted by the trial court. See *Schuster*, 2018 IL App (1st) 171558, ¶ 17 (citing *Susman*, 2015 IL App (1st) 142789, ¶ 18). Thus, in reviewing a *forum non conveniens* decision, " '[t]he issue, then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would.' " *Susman*, 2015 IL App (1st) 142789, ¶ 18 (quoting *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009)). Accordingly, and ultimately, we "may affirm a trial court's *forum non conveniens* order on any basis found in the record." *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶¶ 36, 38-40.

¶ 12    Forum motions rest in the equitable doctrine which considers fundamental fairness with respect to the sensible and effective administration of justice. See *Fennell*, 2012 IL 113812, ¶ 12; *Ruch*, 2015 IL App (1st) 142972, ¶ 37. Essentially, they allow a trial court, which otherwise has proper jurisdiction over a cause, to decline jurisdiction and transfer it to another forum after a determination that the other forum would be better suited to hear it. See *Fennell*, 2012 IL 113812, ¶ 12; *Ruch*, 2015 IL App (1st) 142972, ¶ 37. Generally, such transfers are exercised only in exceptional circumstances. See *Langenhorst*, 219 Ill. 2d at 441; accord *Seilheimer v. Olsen*, 2025 IL App (1st) 240418, ¶ 2 (forum transfers are to be permitted only when the requesting party demonstrates a "rare, exceptional case").

¶ 13    The determination to transfer involves the evaluation of several types of factors. First among these is the deference to afford the plaintiff's choice of forum. See *Schuster*, 2018 IL App (1st) 171558, ¶21; accord *Ruch*, 2015 IL App (1st) 142972, ¶ 37 (this consideration is primary before the evaluation of any other relevant factors). The plaintiff has a substantial interest in choosing the forum and, generally, his choice " 'should rarely be disturbed.' "

*Schuster*, 2018 IL App (1st) 171558, ¶21 (quoting *Langenhorst*, 219 Ill. 2d at 442); accord *Fennell*, 2012 IL 113812, ¶ 18. Accordingly, it has been said that "the battle over forum begins with the plaintiff's choice already in the lead." *First American Bank v. Guerine*, 198 Ill. 2d 511, 521 (2002) (our examination comprises an "unequal balancing test" favoring the plaintiff's choice of forum). This is especially true when the plaintiff chooses a forum that is his home residence or the site of the accident or injury that is the subject of the litigation. See *Langenhorst*, 219 Ill. 2d at 442. When he chooses a foreign forum–one that is not his residence nor the location of the accident or injury–his choice is afforded only some deference, meaning less than it otherwise would receive if he had chosen his home forum or the site of the accident. See *Starr v. Presence Central and Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 18. Yet, "[e]ven under those circumstances, however, the plaintiff's choice is still entitled to *some* deference." (Emphasis in original.) *Starr*, 2024 IL App (1st) 231120, ¶ 18 (citing *Elling v. State Farm Mutual Automobile Ins. Co.*, 291 Ill. App. 3d 311, 318 (1997), and noting the deference to be accorded in that instance is simply "less" and not "none").

¶ 14    In addition to an examination of the plaintiff's choice, the other factors a court is to consider in a forum decision are the private and public interest factors. See *Pierce v. Cherukuri*, 2022 IL App (1st) 210339, ¶ 30 (citing *Dawdy*, 207 Ill. 2d at 175, and noting the consideration of all these factors requires a balancing process). The private interest factors include: the convenience of the parties; the relative ease of access to testimonial, documentary and real evidence; the availability of compulsory process to secure the attendance of unwilling witnesses; the costs to secure the attendance of willing witnesses; the

7

possibility of viewing the site where the accident occurred, if appropriate; and all other practical considerations that make a trial easy, expeditious and inexpensive. See *Fennell*, 2012 IL 113812, ¶ 21; accord *Schuster*, 2018 IL App (1st) 171558, ¶ 21. The public interest factors include: the interest in deciding controversies locally; the unfairness of imposing the burden of jury duty on residents of a forum with little connection to the litigation; and the administrative difficulties caused by adding litigation to already congested court dockets rather than resolving the case at its origin. See *Fennell*, 2012 IL 113812, ¶ 21. In deciding a *forum non conveniens* motion, a court must consider all of these private and public interest factors. See *Ruch,* 2015 IL App (1st) 142972, ¶ 48; accord *Fennell*, 2012 IL 113812, ¶ 17. It must not place too much emphasis on any one factor, nor is it to weigh them against each other. See *Langenhorst*, 219 Ill. 2d at 443-44; accord *Dawdy*, 207 Ill. 2d at 175-76. Rather, it must balance them altogether and view them within the totality of the circumstances presented, as each *forum non conveniens* case is unique on its own facts. See *Langenhorst*, 219 Ill. 2d at 443-44 ("court must evaluate the total circumstances of the case" to determine forum); accord *Fennell*, 2012 IL 113812, ¶ 24.

¶ 15    Ultimately, the burden is on the defendants to show that the relevant private and public interest factors " 'strongly favor' " their choice of forum and merit disturbing the plaintiff's initial choice which, again, will prevail provided the venue is proper and any inconveniences do not greatly outweigh his substantial right to try the case in his chosen forum. *Langenhorst*, 219 Ill. 2d at 444 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107 (1990)); accord *Fennell*, 2012 IL 113812, ¶ 17; see also *Seilheimer*, 2025 IL App (1st) 240418, ¶ 16. In other words, the defendants must prove that the factors

8

"strongly favor transfer before the plaintiff can be deprived of his *** chosen forum." *Pierce*, 2022 IL App (1st) 210339, ¶ 22 (citing *Taylor v. Lemans Corp.*, 2013 IL App (1st) 130033, ¶ 15, and noting that the court conducts an "unequal balancing test" to determine whether the plaintiff's choice prevails). And, the defendants cannot claim that the plaintiff's choice of forum is inconvenient to the plaintiff, nor may an assertion of forum shopping be considered. See *Pierce*, 2022 IL App (1st) 210339, ¶ 22.

¶ 16    At the outset, and briefly, we do not find that the trial court abused its discretion in determining that Daniel's forum choice of Cook County begins with "somewhat less deference." Indeed, defendants do not argue to the contrary. It is undisputed that, as the trial court noted, Daniel, the plaintiff, is a resident of Will County and all of the alleged negligent treatment at issue in this cause occurred in Will County. Thus, as he has chosen a forum that is neither his home forum nor the site of the injury, Daniel's choice is to be afforded less deference. However, this "less" deference is not "none." *Starr*, 2024 IL App (1st) 231120, ¶ 18; accord *Langenhorst*, 219 Ill. 2d at 442-43; *Seilheimer*, 2025 IL App (1st) 240418, ¶ 16.

¶ 17    We turn, now, to the crux of defendants' contention on appeal, namely, that the trial court did not properly weight the private and public interest factors.

¶ 18                            I. The Private Interest Factors

¶ 19                            1. Convenience of the Parties

¶ 20    With respect to the first private interest factor of convenience of the parties, the trial court concluded that it weighed only "slightly in favor of transfer" from Cook County to Will County. Defendants contend that the court abused its discretion in so finding because, in their view, it ignored several facts that "strongly favored transfer." They cite that plaintiff,

decedent, and their adult children all live in Will County, and they claim that, while the children submitted affidavits that they work in Cook County and that trial there would be more convenient for them, they are actually located closer to the Will County courthouse than the Daley Center. Defendants also point to their own affidavits, submitted by Sawhney, DeFuss and Silver Cross' representative, attesting that holding trial in Will County will allow them to minimize disruption to their business, as they will more easily be able to see patients before and after court proceedings and during breaks.

¶ 21    We wholly disagree with any intimation by defendants that the trial court ignored the facts they raise herein. To the contrary, the court acknowledged them, addressed all of them in its decision, and considered them in its final finding. That is, first, the court recognized the children's affidavits about their work locales and the convenience for them of Cook County, mentioning them at the outset of this first forum factor. And, at the same time, it specifically acknowledged the validity of defendants' point (made here again on appeal) that their residences are all in Will County and that they are simply "geographically closer" to the courthouse there than the Daley Center.

¶ 22    However, and in balance to this, the court went on to focus on defendants' argument that Cook County is inconvenient for them (defendants). It found that while this held some truth regarding some defendants, it did not for all of them. For example, the court was aware that Sawhney lives in DuPage County, DeFuss lives in Kendall County, and Silver Cross' representative lives in Will County; that they all work in Will County; and that Sawhney and DeFuss attested to the inconvenience a trial in Cook County would have on their ability to see patients during trial. But, the court observed that Sawhney's residence is actually closer

to the Daley Center than the Will County courthouse; that the difference in distance of DeFuss' commute to the Daley Center rather than the Will County courthouse, though "relatively more inconvenient" because it is longer, was "not significant;" and that Cutrone would be flying in from West Virginia, so the argument that Cook County was inconvenient as to him was wholly inapplicable. Additionally, the court considered the defendants' assertion about disruption to their practice, but concluded there would be "a significant disruption to their work regardless" of where the trial was held, since AUA "operates during standard business hours" much like any courthouse does.

¶ 23    Based on the trial court's analysis, we fail to see how it abused its discretion in weighing this factor. In direct contradiction to their assertions, the court's decision clearly demonstrates that it explicitly considered all the points defendants (again) raise on appeal. It detailed and weighed them. It simply reached a result—namely, that they only weighed "slightly" in favor of transfer as opposed to "strongly"—with which defendants were not pleased. We cannot reverse that result simply because we may have considered a factor differently; rather, we may only do so if no reasonable person would agree with the court's determination. See *Susman*, 2015 IL App (1st) 142789, ¶ 18. In that vein, and examining the court's determination in detail, we cannot say that here.

¶ 24    Moreover, in order for the court to have found that this factor favored transfer, defendants were required to show *both* that plaintiff's chosen forum of Cook County is inconvenient to them *and* that another forum (Will County) is more convenient to *all parties*. See *Langenhorst*, 219 Ill. 2d at 444; accord *Star*, 2024 IL App (1st) 231120, ¶ 30. With respect to inconvenience to them, defendants were successful in showing that Cook County would be

11

inconvenient—but only for some of them. That is, as the trial court found, their argument holds weight as to AUA and Silver Cross, which are entities that operate solely in Will County. A trial in Cook County could thus be considered inconvenient for them.

¶ 25    However, when it comes to the provider defendants, their argument of inconvenience falters. It is true that Sawhney and DeFuss work in Will County and they attested that trial there would be more convenient to their ability to see patients before and after trial and during breaks. However, it also must be considered, as the court pointed out, that neither of them lives in Will County, where they seek transfer. Sawhney's DuPage County residence is actually closer to the Daley Center than the Will County courthouse, and DeFuss' commute from her home in Kendall County to the Daley Center, though longer than to the Will County courthouse, was found to be not very significant, particularly since, as the court aptly noted, Cook and Will counties are contiguous; this weighs against considerations of inconvenience and, thus, transfer. See *Langenhorst*, 219 Ill. 2d at 444 (contiguity of counties is a consideration of note under the first private interest factor and weighs against necessity of transfer). Additionally, although the ability to see patients and disruption to their medical practice should be taken into account, and indeed were by the trial court here, the court's conclusion in this respect was quite reasonable: a trial, regardless of where it is located, will be a significant disruption to defendants' practice, especially considering that their practice operates during standard business hours, similar to those of either county's courthouse, Will or Cook. See, *e.g.*, *Foster v. Hillsboro Area Hospital, Inc.*, 2016 IL App (5th) 150055, ¶ 46 ("[t]he reality is that [physician-witnesses'] schedules for delivering patient care will be interrupted whether the case is tried in [a plaintiff's chosen forum] or [the defendants'

12

suggested forum]," as it is "*the fact of trial*, rather than *the place of trial*, [that] is inconvenient for them" (emphasis in original)). Based on these considerations, it was quite reasonable for the court to have found defendants' argument that Cook County would be an inconvenient forum for them "somewhat weak[]."

¶ 26    What is more significant, however, is that defendants failed in the second portion of their burden regarding this factor, *i.e.*, demonstrating that another forum, namely, Will County, is more convenient for *all* parties. It is true, as defendants note, plaintiff and the adult children live in Will County. However, all of them, just as defendants, submitted affidavits attesting that Cook County was a more convenient forum for them. The children, in particular, attested this was so because they all work in Cook County and it would be easier for them to attend a trial there. As defendants are not permitted to claim that plaintiff's choice of forum is inconvenient to plaintiff (see *Pierce*, 2022 IL App (1st) 210339, ¶ 22), these affidavits undercut their ability to satisfy their burden to show Will County is more convenient to all parties here.

¶ 27    Even more critical, though, is that defendants fail to show that transferring this cause to Will County, as they desire, would be more convenient to Cutrone. While Cutrone is not a party to the instant appeal regarding forum, he most certainly is a party to the cause below; he is a named defendant. Yet, not only has he not participated in this forum appeal, as the trial court noted, he has not submitted an affidavit addressing the inconvenience of Cook County for him. Rather, and in fact, he has not weighed in on the discussion of convenience at all, nor have defendants made such an argument with regard to him. Instead, it has been noted that he now lives in West Virginia. It is safe to presume, then, that he will be flying

13

into the Chicago area for trial. This renders any argument about convenience of forum between plaintiff's choice of Cook County and defendants' preference of Will County essentially inapplicable as to him.

¶ 28        Accordingly, while defendants may have shown that Cook County is inconvenient as to some of them (DeFuss and Sawhney), they did not affirmatively show that Will County is more convenient as to all parties, including all defendants. Having failed in their burden regarding the convenience factor, we find that the trial court's determination that it only slightly favors transfer, rather than strongly as defendants claim, was proper.

¶ 29                          2. Relative Ease of Access to Evidence

¶ 30        The court found the second private interest factor, the relative ease of access to sources of testimonial, documentary and real evidence, was neutral, as there was "not a strong indication that Will County would offer easier access *** as opposed to Cook County." Defendants claim that the court's conclusion was improper because it "relied heavily" on plaintiff's statements regarding the location of the witnesses without considering their roles or distances from each courthouse. They argue that, instead, this factor favors transfer to Will County because trial in Cook County would offer easier access only to decedent's subsequent treaters and plaintiff's experts who will be compensated, while treaters from Silver Cross and AUA who are the subjects of this cause are located closer to Will County.

¶ 31        In its decision on this factor, the court first examined the ease of access to documentary and real evidence and noted that, because Kimberly's medical records can be provided in an electronic format and distributed to the parties in either Cook or Will County, its impact was neutral. Then, it examined the locations of the 17 witnesses who have been disclosed by the

parties and, observing that they "are fairly scattered among three Illinois counties" and multiple states, there was no compelling reason to transfer the matter to Will County, as defendants preferred. As the court explained, while defendants were correct that the medical care at issue took place in Will County, the focus of this factor is whether one forum would provide superior access to evidence compared to the other. In that regard, the court found that "Will County offers easier access to some witnesses, but the same could be said for Cook County regarding other witnesses" and, thus, it concluded that "this factor weighs neutrally."

¶ 32      We find no abuse of discretion with regard to the court's finding of neutrality. First, our Court's prevailing view of access to documentary evidence is the same as that of the trial court here, and defendants do not challenge it on appeal. That is, our Court has repeatedly held that, nowadays, as documentary evidence is provided in an electronic format which is easily distributable to the parties, any concern regarding ease of access to such evidence has been effectively neutralized. See *Fennell*, 2012 IL 113812, ¶ 36 (with respect to the documentary evidence, "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of Internet, email, telefax, copying machines, and world-wide delivery services, since those items can now be easily copied and sent"); *Pierce*, 2022 IL App (1st) 210339, ¶ 35 (citing *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 128, and stating "any documentary evidence, such as medical records, are now provided in an electronic format that can be easily distributed to the parties"); *Evans v. Patel*, 2020 IL App (1st) 200528, ¶ 43 (finding this factor neutral because documents could be easily produced in either county sought to be the forum). In line with

the trial court's finding, then, documents concerning Kimberly's health and medical care, which is the central focus of this matter, can be easily produced and accessed by the parties regardless of whether trial is held in Cook or Will County.

¶ 33    Turning to testimonial evidence, which is the crux of defendants' challenge regarding this factor, we find the trial court's determination that this was likewise neutral was also reasonable, in light of the record before us. Pursuant to that record, the parties have disclosed 17 potential witnesses including experts and, as the court noted, they are scattered among Cook, Will and DuPage counties in Illinois, as well as other states. Their residences and locales of employment are essentially evenly split: three reside in Cook, five in Will, four in DuPage and four outside Illinois; eight work in Cook, four in Will, four in DuPage, and four outside Illinois.

¶ 34    Defendants take issue with the trial court's failure to specifically measure out the location of these witnesses in relation to the two courthouses and examine the role each will have at trial. They claim that Cook County may be a more accessible forum for plaintiff's experts and decedent's subsequent treaters like her gynecological and primary care physicians who work there, but their offices are closer to Will County's courthouse, as are defendants' witnesses, including certain employees of AUA and Silver Cross who will be testifying about the treatment at issue. Thus, defendants claim that the court's deference to the location of plaintiff's witnesses was "unreasonable," especially since they are only subsequent treaters and experts who will undoubtedly be compensated.

¶ 35    We find little merit in defendants' argument here. Again, the record demonstrates that the trial court did not ignore the location of any witness. To the contrary, in its decision, it

16

noted that 17 witnesses were proposed by the parties to testify and it made a chart showing how many of them (subsequent treaters, experts, and fact witnesses alike) resided and worked in each applicable county. Its breakdown was clear: three resided in Cook County, five in Will County, four in DuPage County, and four outside Illinois; while eight worked in Cook County, four in Will County, four in DuPage County, and four outside Illinois. From this, it is reasonable to conclude, as the trial court did, that the witnesses are "fairly scattered" among three Illinois counties (all contiguous, no less), as well as multiple states. When this is the scenario presented, the second factor of ease of access to testimonial evidence does not weigh strongly in favor of transfer. See *Guerine*, 198 Ill. 2d at 523-24 (citing *Hinshaw v. Coachmen Industries, Inc.*, 319 Ill. App. 3d 269, 277-78 (2001), and noting that where a breakdown of potential witnesses shows they "are dispersed among several counties in the same area of the state," the litigation is deemed to have "a nexus with several fora" so this forum factor does not strongly favor transfer).

¶ 36    Defendants' argument does not dispute the court's breakdown; it does not challenge the facts the court relied on regarding the 17 proposed witnesses' residences or work locales, nor does it not suggest those facts were in error. Rather, their argument rests on their assertion that the court ignored some witnesses and/or gave more deference, or should have given more deference, to certain kinds of witnesses over others. Again, defendants are seeking reversal of a forum factor simply because they disagree with the trial court's conclusion based on the evidence presented. Here, we do not find that no reasonable person would agree with the court's conclusion. See *Susman*, 2015 IL App (1st) 142789, ¶ 18. Instead, it was quite reasonable. The court counted all the witnesses, regardless of what their testimony

would be about, and simply tallied how many lived and worked in each county. Numerically, that count was more or less evenly split between Cook, Will and DuPage Counties.[3]  This fully supports its finding of neutrality.

¶ 37        Moreover, we would be remiss if we did not acknowledge, as more and more courts now are, that the same consideration of the dominance of technology and its neutralizing effect on the forum factor of the ease of access to documentary evidence is becoming almost equally applicable when weighing this factor of the ease of access to testimonial evidence.  As this Court recently commented in *Seilheimer*, 2025 IL App (1st) 240418, ¶ 43, we live in an age where it can reasonably be expected that depositions of treating physicians will be conducted remotely via virtual technology, as this has become "a *convenient* option" thanks to its benefits of less expense and time of travel; this trend is quickly rendering witnesses' physical locations, and the concerns involved in this forum factor, almost "irrelevant."  (Emphasis in original.)  Interestingly, the record in the instant case demonstrates that the parties here are not opposed the use of evidence depositions.  That is, both plaintiff and defendants alike have referred in their filings below to the option of having the physician-witnesses testify via evidence depositions or remotely at trial.

¶ 38        We find no abuse of discretion in the court's determination that the second private factor of ease of access to evidence was neutral, rather than strongly favoring transfer.

¶ 39                    3. Availability and Securing the Attendance of Unwilling Witnesses

---

[3] In actuality, while residences were basically evenly dispersed, more witnesses worked in Cook County, by far (eight, compared to four in Will and four in DuPage).

¶ 40    Defendants did not raise the factor of the availability of compulsory process to secure the attendance of unwilling witnesses below, and the trial court did not address or weigh it in its decision denying transfer.  Likewise, defendants do not raise it in their brief on appeal.  Accordingly, we need not address it.  See, *e.g.*, *Milan v. Forest Preserve of District of Cook County*, 2025 IL App (1st) 241058, ¶ 53 (citing Rule 341(h)(7) (eff. Oct. 1, 2020)).

¶ 41                    4. Cost to Obtain the Attendance of Willing Witnesses

¶ 42    In briefly addressing the next private interest factor of the cost to obtain the attendance of willing witnesses, the trial court found that defendants' arguments regarding the "significantly higher" costs of parking and gas for Sawhney and DeFuss were trial to take place in Cook County rather than Will County "unconvincing."  The court recognized that while Cook County "would likely be more expensive for defendants," it also pointed out that Sawhney and DeFuss are medical professionals and that parking near the Daley Center "is offered as low as $17 a day."  On balance, it concluded that "[t]ransferring venue due to a possible disparity in parking fees would be imprudent."

¶ 43    Defendants take issue with the court's finding on this factor, again claiming that it disregarded the fact that transferring this case to Will County would allow Sawhney and DeFuss to continue treating their patients with less disruption, and insisting that travel to the Daley Center "can be time-consuming and unpredictable."

¶ 44    We do not find any error in the trial court's determination that this factor did not strongly favor transfer, as defendants propose.  Initially, defendants reassert the same argument they made with respect to the first forum factor, which we have already analyzed at length.  As we noted earlier, allowing Sawhney and DeFuss to continue treating patients during trial is a

consideration, but it does not strongly weigh in favor of transfer since their practice schedule, which coincides with courthouse hours, will inherently be impacted regardless of where trial is held. See *Foster*, 2016 IL App (5th) 150055, ¶ 46; accord *Seilheimer*, 2025 IL App (1st) 240418, ¶ 48 (noting that "[t]here is no doubt that if a treating physician were called to testify, his or her schedule would be interrupted," and pointing out that "as a practical matter," physician-witnesses "almost assuredly block a day open" for scheduled testimony so that, "with this in mind, the extra minutes it would take that physician to travel *** plays the smallest of roles" in this factor's consideration).

¶ 45       We would also note that defendants focus only on Sawhney and DeFuss—party-defendants to this matter. They do not mention any other particular witnesses who may find, as they claim, that travel to Cook County is "time-consuming and unpredictable," nor any witnesses who would object to or be inconvenienced by having to travel there. We have already discussed that the proposed witnesses are fairly scattered among Cook, Will, and DuPage Counties. As these counties are all contiguous and adjacent to each other, the difference in forum between Will County and Cook County is only "minimally different" and, essentially, "a battle over the minutiae." *Langenhorst*, 219 Ill. 2d at 450. Because such a battle cannot result in a decision that strongly favors transfer, we find no abuse of discretion in the court's determination with respect to this factor.

¶ 46                         5. Possibility of Viewing the Premises, if Appropriate

¶ 47       The trial court noted that the fifth private factor focuses not on the necessity of viewing the premises involved in the cause of action but, rather, on " 'the *possibility* of' " doing so, and the propriety of doing so lies within a trial court's discretion (citing *Dawdy*, 207 Ill. 2d at

20

178 (emphasis in original)). In its view, because the underlying cause of action alleged solely medical negligence, the fact that decedent's "alleged injury" technically took place in Will County made "the importance of this factor relatively low" and, thus, did "not significantly weigh on [its] analysis."

¶ 48     Defendants assert that the court "abused its discretion in giving [this factor] no weight in the *forum non conveniens* balancing test." They assert that, if the trial court were to determine at some point that viewing the premises of Silver Cross Hospital or AUA where decedent received the treatment at issue would be useful, it would be inconvenient for a jury in Cook County to have to travel to Will County to do so, thereby demonstrating that, contrary to the court's decision, this factor favors transfer.

¶ 49     We disagree. First, defendants mischaracterize the record by stating that the court gave "no weight" to this factor. Contrary to this, the record clearly shows the court considered it, but found it of no *significant* weight because the underlying matter rested in medical negligence and not, for example, in a cause of action where a particular location may be critically linked to the injury, like a car or worksite accident. Moreover, even accepting defendants' argument, which rests on a hypothetical that the trial court here has already all but denounced as it looked ahead to trial in this matter, even they recognize that it would only "favor" transfer, not strongly favor transfer as their burden requires. Furthermore, and most significant, "Illinois courts have recognized that in the context of medical negligence cases[,] 'a viewing of the site is rarely or never called for.' " (Internal quotation marks omitted.) *Richardson v. Husain,* 2025 IL App (5th) 240916, ¶ 45 (quoting *Bruce v. Atadero*, 405 Ill. App. 3d 318, 326 (2010), and declaring that "this private interest factor is relatively

21

insignificant and is neutral" in medical malpractice cases); accord *Hackl v. Advocate Health and Hospitals Corp.*, 382 Ill. App. 3d 442, 452 (2008) ("as a practical matter, a viewing of the site is rarely or never called for in a medical negligence case").  Therefore, we find no error in the trial court's determination that, with respect to the underlying cause, this private interest factor was of "relatively low" importance to the consideration of transfer.

¶ 50                                6. Other Practical Considerations

¶ 51        Regarding this final private interest factor, the trial court noted "[t]he only relevant consideration brought by the parties here" that had not yet been explicitly covered is that "most attorneys of record reside in Cook County."  The court went on to "take[] notice of this," but cited *Langenhorst*, 219 Ill. 2d at 446, 450, and pointed out that the location of the parties' attorneys "is a consideration accorded little weight."  The court then concluded that "this factor does not significantly weigh on [its] analysis."

¶ 52        Defendants insist that, as this case involves numerous medical providers, the "hidden" costs of litigation, including time off work, transportation and parking, "are not *de minimis*, but weigh substantially in favor of transferring this case to Will County."  Once again, they revert to their same prior argument in relation to the other factors, namely, that many of the medical providers in this case will have to attend trial further from their places of work, causing "disruptions in their professional responsibilities and clinical practices."

¶ 53        Once again, we have already discussed this consideration, in various forms and at length herein, and have reasoned that trial will inherently inconvenience party- and witness- physicians' practices and professional schedules regardless of whether it is located in Cook or Will County, and that there are many ways to minimize any burdens on non-party

22

physicians, like the use of videotaped depositions, to which both parties have shown their openness. The only remaining concern the trial court could conceive of was the location of the parties' attorneys and rightfully concluded, as our supreme court stated in *Langenhorst*, that such a concern is to be "accorded little weight in determining a *forum non conveniens* motion." 219 Ill. 2d at 450. As defendants do not argue this, but instead rehash considerations we have already addressed with respect to other factors, we find that the court's conclusion that this last private interest factor was of insignificant weight in determining transfer was appropriate.

¶ 54                                    II. Public Interest Factors

¶ 55                    1. Administrative Difficulties Caused by Court Congestion

¶ 56        The trial court next turned to an examination of the public interest factors, focusing first on that of administrative difficulties caused by adding litigation to already congested court dockets. The court compared the data defendants presented in support of transfer "showing the significantly higher volume of cases in Cook County as compared to Will County," with plaintiff's countering data of "the negligible difference in clearance rates between the two fora," with Cook County slightly ahead. The court reasoned that defendants' data of Cook County's higher case volume "ignores the significant differences in population and resources between" the two counties, while plaintiff's data of Cook County's "slightly higher clearance rate suggests *** that Cook County would provide a faster adjudication of this case." The court concluded that, since defendants provided "no evidence that Will County would provide a speedier resolution of the case," this factor weighed against transfer.

¶ 57    Defendants assert the court misconstrued this factor by referencing the instant matter and focusing solely on how fast this particular case could be resolved, rather than more broadly analyzing the availability of finite judicial resources and ensuring that they are not "diminished" by nonresident litigation. Then, and relying on *Adamian v. Balash*, 2024 IL App (1st) 231876, they reiterate their claim that it is the primary location of the negligence that should receive controlling weight. We do not find the trial court misconstrued this factor and, by shifting the focus to unrelated considerations, defendants' argument proves weak.

¶ 58    Defendants are correct that this factor seeks to ensure the judicial resources of a forum are available to its residents and are not overburdened by nonresident litigation. See *Adamian*, 2024 IL App (1st) 231876, ¶ 28. However, we do not believe the trial court's references to this particular case, when discussing this factor, somehow caused it to misconstrue this analysis. When examining the factor, the court accounted for defendants' data regarding case volumes. But, as the proper consideration is the comparative efficiency of the fora at issue, the court found plaintiff's data regarding clearance rates more pertinent. Plainly, this makes sense. As it noted, defendants' data showed Cook County may have a higher volume of cases than Will County, but that data did not take into account both the greater population of Cook County using the judicial services there and, more importantly, the greater number of judicial resources that county has. In making the congestion comparison, the court reasoned that Cook County's slightly higher clearance rate of the more voluminous cases it has over Will County indicates the opposite of what defendants attempted to show, namely, that the chosen forum of Cook County would most likely provide a speedier resolution compared to Will County, where they were seeking transfer.

¶ 59        Defendants do not contest the data the parties presented or on which the court relied. Rather, they contest the way the court interpreted and applied it. But, as just described, we find no abuse of the court's discretion in reasoning that clearance rates are more critical in an examination of court congestion than simply the volume of cases a forum has. See *Starr*, 2024 IL App (1st) 231120, ¶¶ 62-63 (finding no abuse in trial court's use of data from Administrative Office of the Illinois Courts comparing Cook County's greater volume (due to greater population) but quicker clearance rates (due to more judges) to Will County to reason that the congestion factor did not favor transfer to Will County; "[d]ata like this is only meaningful in terms of how long it took to resolve the backlog"); see also *Seilheimer*, 2025 IL App (1st) 240418, ¶ 67 ("[t]he proper consideration of this factor is not the number of cases alone but the efficiency with which the court handles those cases"). Cook County's higher clearance rate would indicate that it would probably provide a speedier resolution—to this case, or any case in its forum.

¶ 60        Additionally, defendants' shift to discussing the primary location of negligence and their citation to *Adamian* ignores the crux of this factor. Again, this factor looks to efficiency of courts and the congestion caused by nonresident litigation in the chosen forum versus the proposed forum of transfer—not the location of the underlying incident. Moreover, *Adamian* does not provide defendants with a strong argument. In *Adamian*, a Kane County plaintiff filed a medical negligence claim in Cook County against the defendants: a Cook County-resident doctor, a hospital residing in Cook and DuPage Counties, and a medical agency from DuPage County. The defendants sought transfer to DuPage County and, following the trial court's denial, the reviewing court reversed, finding critical the fact that the doctor practiced

25

in DuPage, as did the hospital and agency, and that was where the negligence and injury were said to have occurred. See *Adamian*, 2024 IL App (1st) 231876, ¶ 30. Pertinent here, however, when the *Adamian* court examined the public forum factor of congestion, it stated that, "[w]hichever county the case is litigated in, *it will not be nonresident litigation*," since there were parties who resided in both the chosen and proposed fora. (Emphasis added.) *Adamian*, 2024 IL App (1st) 231876, ¶ 28. Contrarily, in the instant case, where no party resides in Cook County, a trial there would necessarily involve nonresident litigation and, thus, a deeper consideration of this factor than provided in *Adamian*.

¶ 61 Fundamentally, our supreme court has repeatedly deemed congestion of respective court dockets "a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517; accord *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555 (1992) (this "is the least significant of the public interest factors"); *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986). It was defendants' burden to show that plaintiff's choice of Cook County would be overburdened by this nonresident litigation, so that transfer to Will County was strongly favored. The trial court was in the best position to gauge its own level of congestion and found it was not an issue (see *Richardson*, 2025 IL App (5th) 240916, ¶48); and, defendants' data regarding simple volume did not satisfy their burden to show the opposite. Therefore, we find no abuse in the court's determination that this factor weighed against transfer.

¶ 62 2. Unfairness of Imposing Jury Duty on Residents of Cook County

¶ 63 The next public interest factor the trial court examined was the unfairness of imposing the burden of jury duty on residents of Cook County. Defendants challenged that forum as

having little connection to the litigation and residents with no interest in its outcome, since the injury took place, the medical treatment at issue occurred, and defendants Sawhney and DeFuss only operate, in Will County. The court disagreed, finding this factor weighed against transfer. It noted that defendant AUA advertises in Cook County and treated 399 Cook County patients between October 2023 and September 2024; defendant Silver Cross likewise advertises in Cook County, is only 4 miles from the Cook County border, and is the closest major hospital for Cook County residents living in a number of cities near that border; and defendant Silver Cross has partnerships with medical providers located in Cook County, such as Lurie Children's Hospital of Chicago, University of Chicago Medicine, and Rush University, pursuant to which it provides healthcare services on its campus in Will County to their Cook County patients. The court also noted defendant Silver Cross' affiliation with two Cook County facilities it advertises on its website. Reasoning that "Silver Cross Hospital and Medical Centers is the defendant in this case, not just the Silver Cross hospital located in Will County," the court concluded that "there are sufficient connections between this case and Cook County" such that "residents of Cook County have an interest in the outcome."

¶ 64   On appeal, defendants claim the trial court misinterpreted this factor by believing that "any connection," rather than a "*significant* factual connection" (emphasis in original), with Cook County was required to impose litigation upon a Cook County jury, and they characterize the connections the court relied on as irrelevant and insufficient. Pointing out that decedent was exclusively treated by defendants in Will County, that their advertisements were created after the incidents occurred, and that Silver Cross only treats Cook County residents in Will

27

County, defendants argue the court confused their presence in Cook County under venue purposes to find that Cook County has sufficient interest to justify forum there.

¶ 65     We disagree, for many reasons. First, we do not accept defendants' intimation that the court applied an inappropriate test for this factor. The trial court nowhere stated in its decision that "any connection at all" justifies imposing jury duty in a plaintiff's chosen forum. To the contrary, the court quoted *Guerine*, 198 Ill. 2d at 521, and put forth the standard for this factor as set by our supreme court: transfer " 'is appropriate only when the litigation has no practical connection, no nexus, with the plaintiff's chosen forum.' " The court went on to examine the facts of this case, considering at length whether they demonstrated that the cause was "sufficiently connected" to plaintiff's chosen forum of Cook County so as to impose jury duty on its residents. Clearly, it used a more demanding standard of consideration than simply "any" connection, as defendants mistakenly claim.

¶ 66     The court then discussed several facts that weighed on its consideration. It found critical that defendants regularly, and admittedly, see and treat patients from Cook County and that Silver Cross is located very near that county's border, making it the closest major hospital for many Cook County residents living in Cook County cities like Orland Hills, Orland Park, Tinley Park, and Oak Forest. Next, it found that Silver Cross' partnerships with Chicago medical providers indicated a relationship between them by which Silver Cross provides healthcare services at its Will County campus to their Cook County residents. And, the court found that the two Cook County facilities advertised on Silver Cross's website demonstrated an affiliation between the counties.

28

¶ 67    It was quite reasonable, in our view, for the trial court to conclude that Cook County residents have a sufficient connection with the litigation at hand so as to justify the imposition of jury duty on them.  Reviewing court have repeatedly held that " '[a]ny county to which [a healthcare provider] provides service has an interest in the outcome of the case.' " *Hackl*, 382 Ill. App. 3d at 452 (quoting *Prouty v. Advocate Health & Hospitals Corp.*, 348 Ill. App. 3d 490, 497 (2004); see also *Pierce*, 2022 IL App (1st) 210339, ¶ 51 (holding that, where the defendants-medical providers from McDonough and Knox Counties also offered medical care to Cook County residents, "Cook County has an interest in the litigation" so as to justify forum there); see, *e.g.*, *Wylie v. Schaefer*, 2021 IL App (5th) 200425, ¶¶ 18-19 (where it is unchallenged that the defendants provide medical services to the citizens of a county, "a reasonable circuit court judge could find that [county] also has an interest in the subject of this litigation and that it would not be unfair to burden the citizens" with jury duty).  Here, defendants, though located in Will County, provide medical care to Cook County residents and have reciprocal affiliations and partnerships with Cook County providers for services.  Cook County residents clearly have an interest in ensuring these defendants are not negligent and otherwise operate with due care.

¶ 68    While we, too, join in the trial court's determination that this factor weighed against transfer, ultimately, that is not the issue.  Our duty is to examine only whether the court's determination as to this factor was reasonable and, based on all the facts presented, it was.  This is not a case where the only ties between litigation and a plaintiff's chosen forum are solely a defendant's business interests.  In contrast, here, defendants' connections to and contacts with Cook County, as detailed above, go far beyond merely the "doing of business"

29

required for venue. The trial court reasonably concluded that, because defendants treat and serve Cook County patients, Cook County residents have a sufficient interest in this litigation so that it would not be unfair to impose jury duty on them.

¶ 69                    3. Having Local Controversies Decided Locally

¶ 70        The final public interest factor considered by the trial court in this matter was the interest in having local controversies decided locally. Noting that this factor is "similar" to that of imposing jury duty, it stated that there is "an additional focus on" the interest of Will County residents in this case, defendants' choice of forum. The court acknowledged that "Will County residents certainly have an interest in the resolution of this case," as the alleged negligence took place there, defendants continue to operate there, the relevant actors were working there, and they were doing so in a facility that only operates there. It then went on to state that, "[h]owever, there is still some local interest in Cook County residents." The court referred to the facts it analyzed with respect to the prior factor of jury duty and reiterated that "[s]ome Cook County residents rely on defendants for medical care, some Cook County residents are partnered with [defendant] Silver Cross, and [defendant] Silver Cross' name is on two medical facilities in Cook County." Concluding from this that "residents of Will County and Cook County both have a significant interest in the outcome of this case," it found this factor "weighs neutrally."

¶ 71        Defendants argue that the trial court erred in finding this factor was neutral. Again turning to *Adamian*, defendants reiterate that, because the most substantial factor in giving any county a local interest is the location of the conduct resulting in that litigation, and

because the treatment at issue was provided to decedent in Will County, this factor undeniably weighed in favor of transfer.

¶ 72        Defendants correctly state the general proposition that the location of the incident resulting in the litigation is the most substantial factor in giving a county a local interest. See *Adamian*, 2024 IL App (1st) 231876, ¶ 26 (and cases cited therein). However, this does not mean that more than one county cannot also have a local interest in the matter. Indeed, our reviewing courts, *Adamian* included, have made clear that a controversy can create a valid, real and genuine local interest in multiple counties at the same time. See *Adamian*, 2024 IL App (1st) 231876, ¶ 26 ("[t]o be sure, Du Page County [site of alleged negligent treatment] is not the only county that can claim an interest in the case"); see also *Hackl*, 382 Ill. App. 3d at 452 (while allegedly negligent medical care was rendered in Lake County, "Cook County and its residents also have an interest in [the] case because defendant [provider] is a healthcare provider in Cook County and the greater Chicago area"); *Pierce*, 2022 IL App (1st) 210339, ¶ 51 (while the alleged negligence occurred in McDonough and Knox Counties, Cook County also had a local interest in the litigation since the medical facility operated clinics to its residents); *Wylie*, 2021 IL App (5th) 200425, ¶ 19 (although Madison County had strong interest as the site of the alleged medical negligence, "a reasonable circuit judge could find that St. Clair County also has an interest in the subject of this litigation").

¶ 73        In the instant cause, the trial court had to determine whether this factor of local interest in a local controversy favored the residents of Cook or Will County. To do so, it balanced, on the one hand, the facts that in Will County, the alleged medical negligence took place there, defendants continue to operate there, the relevant actors were working there at the time of the

incident, and they were doing so in a facility that only operates there, with, on the other hand, the facts that in Cook County, many of its residents rely on the same defendants for medical care, some of its residents are partnered with defendant Silver Cross, and defendant Silver Cross' name is on two Cook County medical facilities. Upon comparing these facts, which were all present in the record, the court determined in its discretion that, as both counties have an interest in the subject of this litigation, the competing interests rendered this factor neutral. Without more, we do not find its evaluation unreasonable. See *Wylie*, 2021 IL App (5th) 200425, ¶ 19 (deference must be given to trial court's determination of this factor as long as it is reasonable in light of the circumstances, regardless of whether a reviewing court would reach the same conclusion); see also *Starr*, 2024 IL App (1st) 231120, ¶ 58 (concluding that "Cook County residents do have some interest in the outcome of this case" where alleged negligent treatment occurred in Will County but "patient was transferred to Cook County for prolonged treatment that is alleged to have been needed because of medical malpractice;" while the connection may be less significant, it is "not *** nonexistent" and thus, trial court's denial of the defendant's motion to transfer the cause from Cook County to Will County could not be considered an abuse of discretion so as to merit reversal).

¶ 74                                    CONCLUSION

¶ 75        Ultimately, and again, the burden was on defendants in the instant cause to establish that the private and public interest factors " ' "strongly favor" ' " transfer to Will County, their choice of forum, and merit disturbing the plaintiff's initial choice of Cook County; unless this burden is met, the plaintiff's forum choice is rarely disturbed. *Evans*, 2020 Ill. App (1st) 200528, ¶ 59 (quoting *Langenhorst*, 219 Ill. 2d at 444, quoting *Griffith*, 136 Ill. 2d at 107).

32

Based on our thorough review, we cannot say defendants met that burden here. Of course, it is conceivable that a different conclusion could be reached. Needless to say, defendants argue as much with respect to every forum factor in this case. Yet, we reiterate that "our duty is not to reweigh the private and public interest factors, but to determine whether the trial court abused its discretion when it denied the motion to transfer." *Evans*, 2020 Ill. App (1st) 200528, ¶ 60. In light of the record before us, we cannot say the court's decision to deny defendants' transfer motion was so unreasonable that no court would take the position it reached on the facts at hand.

¶ 76      Accordingly, and for all the foregoing reasons, we affirm the judgment of the trial court.

¶ 77      Affirmed.